**Dino CAVAZOS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–96–530–CR.**

Court of Appeals of Texas,
Corpus Christi.

April 9, 1998.

Discretionary Review Refused
July 15, 1998.

Francisco E. Gonzales, Jr., McAllen, Jose Antonio Gomez, Edinburg, for Appellant.

Rene Guerra, Theodore C. Hake, Traci A. Phillips, Criminal District Attorney's Office, Edinburg, for the State.

## OPINION

SEERDEN, Chief Justice.

On a plea of not guilty, a jury found Dino Cavazos, appellant, guilty of intoxication manslaughter and failure to stop and render aid. The jury assessed punishment at ten years confinement for the intoxication manslaughter conviction, and five years probation for the failure to stop and render aid convic-

tion. We reverse and remand for a new trial.

### FACTUAL BACKGROUND

At approximately 2:25 a.m. on August 9, 1995, Adan Martinez was killed in a truck-motorcycle accident on FM 88, just north of the town of Elsa, Texas. Martinez was the driver of the motorcycle. Although appellant's truck was involved in the accident, the driver of the truck was not identified at the scene of the accident.

Rosie Silva, a citizen living near the accident scene, testified that she had been awakened at 2:25 a.m. by appellant. Silva, a former co-worker of appellant's, testified that appellant told her that he had been in an accident in front of her house and that someone had died in the accident. Silva further testified that when she had returned from calling the police, appellant had left the front of her house and had started walking down F.M. 88.

At approximately 7:00 a.m., police officers picked up appellant walking northbound on FM 88. According to the testimony of the officers, appellant exhibited signs of intoxication, including a strong odor of alcohol, slurred speech, and bloodshot eyes. Appellant was therefore handcuffed, *Mirandized*,[2] and taken to the police station.

At approximately 10:00 a.m., appellant voluntarily agreed to provide a blood sample for blood alcohol testing. The sample was drawn at Knapp Hospital in Weslaco, Texas, some eight hours after the accident.

Texas Department of Public Safety (hereinafter "D.P.S") chemist Raul Guajardo testified that he performed the blood alcohol analysis on appellant's blood sample. According to his testimony, the analysis indicated that appellant's blood alcohol concentration was .09.[3] By extrapolating from the results, he estimated, assuming appellant had

---

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. The Texas Penal Code defines "intoxicated" as having an alcohol concentration of .10 or more. TEX. PENAL CODE ANN. § 49.01(2)(B) (Vernon 1994). Guajardo testified that appellant's blood was tested two times and produced results of .098 and .104. He further explained that it was standard procedure to take the lower score and round down to the nearest hundredth, which produced a score of .09.

nothing to drink after the accident, appellant's blood alcohol concentration at 2:30 a.m. would have been approximately .20—.23. Guajardo acknowledged that the extrapolation was an inexact estimate and subject to several variables.

## DISCUSSION

In his third point of error, appellant argues that evidence of his blood alcohol concentration should not have been admitted because the State failed to establish the proper predicate for admitting this evidence. Specifically, he alleges that the State failed to prove that the blood was taken by a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse under the supervision or direction of a licensed physician, as is required under the statute. *See* Act of June 4, 1969, 61st Leg., R.S., ch. 434, 1969 Tex. Gen. Laws 1469, now codified at TEX. TRANSP. CODE ANN. § 724.017 (Vernon Pamph.1998). We use an abuse of discretion standard in reviewing a trial court's decision to admit evidence over an objection as to its predicate. *Smith v. State*, 683 S.W.2d 393, 404 (Tex. Crim.App.1984); *Juhasz v. State*, 827 S.W.2d 397, 402 (Tex.App.—Corpus Christi 1992, pet. ref'd).

D.P.S. Trooper Vidales testified that appellant's blood sample was taken at Knapp Medical Center in Weslaco, where appellant was attended to by emergency room personnel. He testified that he "understood" that a registered nurse or one of the doctors took the blood, although he was not sure. He could not recall whether the blood sample was drawn by a man or a woman, and he did not know whether the person drawing the blood was qualified to take a blood sample.

The State asserts on appeal that the blood sample itself, which was admitted into evidence as an exhibit, indicates that it was taken by "Marco Pena" whose title is "phlebotomist." The State also argues that *State v. Bingham*, 921 S.W.2d 494, 496 (Tex.App.—Waco 1996, pet. ref'd) stands for the proposition that a phlebotomist is a qualified technician under the statute. Our examination of the exhibit confirms that the name "Marco Pena" is handwritten on the line labeled

"sample taken by," but the handwriting above the line labeled "title" is mostly illegible. The first letter appears to be a "p," but the rest of the letters are undecipherable. However, even if the word "phlebotomist" were clearly written, that alone would not satisfy the statute because a phlebotomist is not per se a qualified technician. The statute lists several professions whose members automatically satisfy the statute, and also lists a general category for "qualified technicians." Act of June 4, 1969, 61st Leg., R.S., ch. 434, 1969 Tex. Gen. Laws 1469. Since "phlebotomist" is not listed among the occupations that automatically satisfy the statute, a blood sample taken by a phlebotomist satisfies the statute only if the individual phlebotomist is proven to be "qualified."

In *Bingham*, the case cited by the State, the phlebotomist, Tamara Alvarado, testified that she attended a training course at Blinn College where she studied anatomy and the tests associated with phlebotomy, and that she had to pass a practical test before she graduated. *Bingham*, 921 S.W.2d at 495. Her supervisor testified that her hospital requires phlebotomists to complete a formal course such as the course at Blinn or to have a year of full-time experience, and that Alvarado met both requirements. *Id.* at 495–96. The supervisor added that she was familiar with Alvarado's work from when Alvarado did clinical rotations at the hospital while completing her course, that Alvarado had been an outstanding student, and that she considered Alvarado qualified to draw blood. *Id.* After noting that a technical term not defined in a statute should be interpreted according to the testimony of witnesses familiar with the field, the Waco court held that the term "qualified technician" must include a phlebotomist whom a hospital has determined is qualified to draw blood. *Id.* at 496.

In this case, no one testified regarding the qualifications of the person drawing the blood, and no evidence established that the blood was drawn by someone the hospital had determined to be qualified for that task. The testimony of Trooper Vidales amounts to little more than his assumptions about what sort of person must have taken the blood.

The State argues that if the person drawing the blood were not qualified, then Trooper Vidales would have questioned the individual. There was no evidence presented, however, showing that Trooper Vidales could distinguish between a qualified and an unqualified person drawing blood, and no evidence of what action he would take if he suspected the person drawing blood was unqualified. The State also urges that it is unlikely that an unqualified person would have access to patients and be able to draw blood in a hospital. Although one would expect blood to be drawn by a qualified person at a hospital, that expectation does not satisfy the State's burden of proof. We do not agree that we may assume, without proof, that the blood was drawn by a qualified technician. We hold that the trial court abused its discretion in holding the State met its burden of proving that the blood sample was drawn in compliance with the statute and therefore admitting the evidence resulting from appellant's blood sample. Having found the results of the blood test to be inadmissible, Guajardo's testimony regarding those results must likewise be inadmissible. *See Turner v. State*, 734 S.W.2d 186, 188 (Tex.App.—Dallas 1987, pet. ref'd) ("Because we have found the report of the blood test and its results inadmissible, it follows, and we hold that testimony regarding those results was likewise inadmissible.").

### HARMFUL ERROR ANALYSIS

■ Having found error, we must next determine whether this error requires reversal of the trial court's judgment. Under rule 44.2(b), "[a]ny [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX.R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

■ An error is harmless only if, after reviewing the entire record, the reviewing court is sure that the error did not influence the jury or had a very slight effect on its verdict. *United States v. Heller*, 625 F.2d 594, 600 (5th Cir.1980); *Haskins v. State*, 960 S.W.2d 207, (Tex.App.—Corpus Christi, 1997, no pet. h.); *Fowler v. State*, 958 S.W.2d 853, 864 (Tex.App.—Waco, 1997, review granted). If we are left in "grave doubt" as to whether the error itself had substantial influence, the conviction cannot stand. *O'Neal v. McAninch*, 513 U.S. 432, 437, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995) (citing *Kotteakos*, 328 U.S. at 765, 66 S.Ct. at 1248). In other words, "[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Id.* (quoting *Kotteakos*, 328 U.S. at 764–65, 66 S.Ct. at 1247–48); *Fowler*, 958 S.W.2d at 864.

Where, as here, the defendant enters a plea of not guilty, he puts the State to its proof; that is, the burden of proof is upon the State to prove the essential elements of the offense beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 38.03 (Vernon Supp.1998); TEX. PENAL CODE ANN. § 2.01 (Vernon 1994); *Ex parte Williams*, 703 S.W.2d 674, 678 (Tex.Crim.App.1986); *see also Matchett v. State*, 941 S.W.2d 922, 947 (Tex.Crim.App.1996) (Clinton, J., dissenting) (where defendant pleads not guilty, "a guilty verdict must be predicated upon evidence that is sufficient to convince ... the factfinder beyond a reasonable doubt of the defendant's guilt.").

■ The elements necessary to establish the offense of intoxication manslaughter are that (1) the defendant (2) operated a motor vehicle in a public place (3) while intoxicated, and (4) that by reason of that intoxication, caused the death of another. TEX. PENAL CODE ANN. § 49.08 (Vernon 1994); *Cuellar v. State*, 957 S.W.2d 134, 137 (Tex.App.—Corpus Christi 1997, no pet. h.). Accordingly, it follows that the State, upon appellant's plea of "not guilty," had the burden to prove beyond a reasonable doubt that defendant was both the driver of the truck involved in the accident, and that he was intoxicated at the time of the accident.

Aside from Guajardo's testimony, the following is the only evidence even remotely bearing on the questions of whether appellant was the driver of the truck involved in the accident, and whether he was intoxicated at the time of the accident.

Police Officer Victor Garcia testified that he saw appellant's truck parked outside a bar in La Villa at approximately 1:45 a.m. The bar regularly closed at 2:00 a.m. The collision occurred shortly before 2:30 a.m. on FM 88 just north of Elsa, a town between La Villa and appellant's home in Monte Alto. We note that neither Officer Garcia-nor anyone else-offered any testimony that appellant was in the bar or was drinking alcohol at any time prior to the collision.

At approximately 2:30 a.m., appellant knocked on the door of Rosie Silva, a former co-worker who lived on FM 88 near the accident scene. As stated above, she testified that appellant was nervous and "shaken up." She offered no evidence relating to any factor that would have had a bearing on appellant's intoxication, such as slurred speech, bloodshot eyes, weaving or staggering gate, odor of alcohol, or other conditions. This was her only testimony regarding appellant's condition. She did testify that appellant told her "Rosie, help me ... please, Rosie, there is somebody dead." She testified that she went in to call the police, but when she came back out appellant had left.

Arresting officers Guerra and Flores testified they encountered appellant walking northbound along FM 88 at approximately 7:00 a.m. Appellant had a strong odor of alcohol on his breath, bloodshot eyes, and spoke with slurred speech, which Guerra indicated were symptoms of intoxication. Flores also testified he smelled a strong odor of alcohol when he approached appellant. Flores stated "there is no doubt in my mind that he was intoxicated." Both Flores and Guerra testified that they had been trained to recognize symptoms of intoxication.

We hold that this evidence is insufficient to show the essential elements of the charged crime. Neither the testimony of a former coworker that appellant knocked on her door and asked for her assistance, nor the fact that appellant's truck was seen parked outside a local bar forty-five minutes prior to the accident constitute evidence of appellant's intoxication at the time of the accident or of appellant's involvement as the driver involved in the accident. Regarding the testimony of the arresting officers, while it constitutes evidence of appellant's intoxication at the time of arrest, it is not sufficient to show that appellant was the driver of the automobile or that appellant was intoxicated at the time of the accident.

After reviewing the record, we find the blood sample evidence and the testimony extrapolated therefrom, to be the only evidence that appellant was legally intoxicated at the relevant time. Consequently, while we cannot say with certainty what prompted the jury to convict appellant, we cannot say that the admission of the blood sample and the testimony extrapolated therefrom did not have a substantial effect on the jury's verdict. As such, we must find the error harmful.

Accordingly, we sustain appellant's third point of error, reverse the decision of the trial court, and remand for a new trial. In light of our disposition on appellant's third point, we need not consider appellant's remaining points. TEX.R.APP. P. 47.1.

CHAVEZ, J., dissenting, joined by FEDERICO G. HINOJOSA, Jr., and RODRIGUEZ, JJ.

CHAVEZ, Justice, dissenting.

I concur in the majority's holding that the blood sample evidence was improperly admitted. However, because I disagree with the majority's analysis of whether this error had a substantial effect on the verdict, I dissent.

The blood sample constituted evidence that Cavazos was drunk several hours after the accident. However, this was also proven by the testimony of the police officers who arrested Cavazos. The majority correctly notes that, when he was arrested at 7:00 a.m., four and a half hours after the accident, Cavazos "had a strong odor of alcohol on his breath, bloodshot eyes, and spoke with slurred speech." The majority also notes the testimony of one the officers that "there is no doubt in my mind that he was intoxicated."

Yet the majority inexplicably concludes that "the blood sample evidence and the testimony extrapolated therefrom [were] the only evidence that appellant was legally intoxicated at the relevant time."

If the blood sample, which was drawn at approximately 10:00 a.m., provided evidence that Cavazos was intoxicated when the accident occurred, then surely the arresting officers' testimony regarding Cavazos's intoxicated condition when they arrested him at 7:00 a.m. was also evidence that he was intoxicated at the time of the accident. The blood sample evidence added nothing substantial to the officers' testimony; rather it only reiterated their assessment by showing that he was still near the legal limit for intoxication when his blood was tested a few hours after his arrest.

The majority acknowledges that the arresting officer's testimony was evidence of appellant's intoxication at the time of arrest, but it finds this evidence "insufficient" to show that Cavazos was the driver of the car or that Cavazos was intoxicated at the time of the accident. The majority's discussion of whether the State proved that Cavazos was the driver of the car involved in the accident is misplaced. The issue before us is whether the erroneous inclusion of the blood sample evidence had a substantial effect on the verdict. Whether the blood sample evidence is included . or excluded has no bearing on whether the State met its burden to prove that Cavazos was behind the wheel. Cavazos did not challenge the sufficiency of the evidence supporting his conviction, and none of his points of error relate even tangentially to whether Cavazos was the driver. The state of the evidence showing that Cavazos was the driver is simply irrelevant to this appeal.

Similarly, while I agree that the evidence establishing that Cavazos was intoxicated at the time of the accident is not particularly strong, the issue before is not the overall sufficiency of the evidence, but what effect the blood sample evidence had on the verdict. The principle weaknesses of the State's case were the lack of direct evidence that Cavazos was behind the wheel, and the State's inability to account for Cavazos's whereabouts and activities between the time of the accident and the time of his arrest, which left open the possibility that he became intoxicated only *after* the accident. However, the blood sample evidence does nothing to address either of these weaknesses. Because all the blood sample evidence accomplished was to echo the testimony of the arresting officers, I would hold that the erroneous inclusion of the blood sample evidence did not have a substantial effect on the verdict, and I would affirm the conviction.

FEDERICO G. HINOJOSA, Jr., and RODRIGUEZ, JJ., join the dissent.