Jessup v. SOT
















 

NUMBER 13-02-00024-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG
                                                                                                                       

MATTHEW JESSUP,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                                Appellee.
                                                                                                                       

On appeal from the 130th District Court of Matagorda County, Texas.
                                                                                                                       

MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Hinojosa and Castillo
Memorandum Opinion by Justice Hinojosa

          A jury found appellant, Matthew Jessup, guilty of the offense of intoxication
manslaughter


 and assessed his punishment at thirteen years’ imprisonment and a $5,000
fine. The trial court has certified that this case “is not a plea-bargain case, and the
[appellant] has the right of appeal.” See Tex. R. App. P. 25.2(a)(2). By four points of error,
appellant contends that two of the three blood tests admitted into evidence were not drawn
by a person authorized by section 724.017 of the Texas Transportation Code, two of the
three blood tests admitted into evidence were not reliable, and the trial court erred in
admitting retrograde extrapolation evidence. We affirm.
A. Factual Background
          On September 16, 2000, at approximately 4:24 a.m., appellant was traveling on
Highway 521 in Matagorda County, when he drove into the opposite lane of traffic and
collided head-on with a truck driven by Robert Hogg. Hogg was killed instantly. Appellant
was injured and was taken to Matagorda General Hospital. The hospital conducted three
separate blood alcohol tests on appellant. The trial court admitted all three blood test
results at trial.
B. Section 724.017 Blood Tests
          By his first point of error, appellant contends the trial court erred in admitting into
evidence the results of the second and third blood tests because his blood was not drawn
by a person listed or authorized by section 724.017 of the transportation code. See Tex.
Transp. Code Ann. § 724.017(a) (Vernon 1999). The State argues that Abraham Estrada,
the phlebotomist who drew appellant’s blood, was a qualified technician authorized by the
statute.
          We review a trial court’s decision to admit evidence under an abuse-of-discretion
standard. Cavazos v. State, 969 S.W.2d 454, 456 (Tex. App.–Corpus Christi 1998, pet.
ref’d). The test for abuse of discretion is whether the trial court acted without reference to
any guiding rules or principles. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim.
App. 1990). A reviewing court cannot conclude that a trial court abused its discretion
simply because, in the same circumstances, it would have ruled differently, or if the trial
court committed a mere error in judgment. Id. We must uphold the trial court’s ruling so
long as it is “within the zone of reasonable disagreement.” Wheeler v. State, 67 S.W.3d
879, 888 (Tex. Crim. App. 2002).
          Section 724.017(a) provides, in relevant part:

Only a physician, qualified technician, chemist, registered professional nurse,
or licensed vocational nurse may take a blood specimen at the request or
order of a peace officer under this chapter.
 
Tex. Transp. Code Ann. § 724.017(a) (Vernon 1999). Because “phlebotomist” is not listed
in the statute, a blood sample taken by a phlebotomist satisfies the statute only if the
individual is proven to be “qualified.” See Cavazos, 969 S.W.2d at 456 (because no one
testified regarding qualifications of person who drew blood and record contained no
evidence blood was drawn by someone hospital had determined to be qualified, State
failed to prove that person drawing blood was qualified under section 724.017); see also
State v. Bingham, 921 S.W.2d 494, 495 (Tex. App.– Waco 1996, pet. ref’d) (phlebotomist
was held to be “qualified technician” because phlebotomist and her supervisor testified
regarding her qualifications). 
          The record shows that at the time he drew the blood samples in question, Abraham
Estrada was employed by Matagorda General Hospital as a phlebotomist. His job
responsibilities included the drawing of blood. Estrada had successfully completed a
course in the drawing of blood and had successfully taken the hospital’s checklist test on
the drawing of blood. He was also within three months of completing a college course to
become a laboratory technician.
          We conclude the State established that Estrada was a qualified technician
authorized by section 724.017 to draw blood. Accordingly, we hold the trial court did not
abuse its discretion in admitting the blood tests in question into evidence. Appellant’s first
point of error is overruled.
C. Blood Tests
          In his second and third points of error, appellant complains the trial court erred in
allowing evidence to be presented regarding the first and second blood tests because
neither blood test met the Kelly


 factors of theory validity and proper application of
technique. Specifically, appellant asserts the hospital erred in: (1) using an alcohol swab
to clean appellant’s arm before drawing blood; (2) using an I.V. containing a lactate ringers
solution; (3) running the test on blood serum, not whole blood; and (4) running the test on
an Abbott Axsym analyzer.
          We review the trial court’s admission of scientific evidence under an abuse-of-discretion standard. Griffith v. State, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998). To be
held reliable, scientific evidence must meet the following factors: (1) the underlying
scientific theory must be valid, (2) the technique applying the theory must be valid; and (3)
the technique must have been properly applied. Kelly v. State, 824 S.W. 2d 568, 573 (Tex.
Crim. App. 1992). 
                                                        1. Alcohol Swab
          Appellant contends that the first and second blood tests were inadmissible because
hospital employees Abraham Estrada and Jody Durham,


 used an alcohol swab to clean
appellant’s arm before drawing the blood, thereby contaminating the blood samples. The
State argues that there is very little likelihood that the alcohol swab contaminated the test
because: (1) the alcohol most likely dried on the surface of appellant’s skin before the
samples were drawn, and (2) the maximum change in the test reading would be five
percent.
          The State’s expert, Max Courtney, testified that based on published scientific studies
and experiments that “if the alcohol dried prior to drawing the blood, there would be no
effect [on the blood alcohol test validity].” But even if the alcohol had not dried completely,
there would be a “maximum five percent cross reactivity.” In other words, an alcohol swab
that had not dried completely would add no more than 0.005 to an actual reading of 0.10,
resulting in a reading of 0.105.
          Appellant’s expert, Patrick Demeris, testified that the use of an alcohol swab would
contaminate a blood sample and produce a higher blood alcohol result. However, he
acknowledged that the use of an alcohol swab would not definitely produce a higher blood
alcohol reading. Demeris stated:
Nobody knows for sure what effect [an alcohol swab] has. There’s no
predictable way that you can say that it did or did not have an effect . . . . 
You could have varying degrees of potential influence on a test with the
alcohol . . . . It’s pure conjecture.
 
          The trial court ruled that the use of an alcohol swab did not render the first and
second blood tests inadmissible. Because the trial court’s ruling was within the zone of
reasonable disagreement, we conclude it did not abuse its discretion.
2. Lactate Ringers
          Appellant contends that the first and second blood tests were not reliable because
the hospital used lactate ringers which falsely produced an elevated blood alcohol level. 
Courtney testified that the use of an I.V. containing lactate ringers would “dilute the blood
alcohol concentration.” Demeris, without reference to any authority, testified that lactate
ringers would produce an elevated alcohol result. When he was confronted with
Courtney’s testimony, Demeris acknowledged the dilution effect.
          After concluding that the use of an I.V. containing lactate ringers did not produce an
elevated blood alcohol level, the trial court allowed the results of the first and second blood
tests to be presented to the jury. We conclude the trial court did not abuse its discretion
in so ruling.
3. Blood Serum
          Appellant contends that the first and second blood tests had higher alcohol readings
because the hospital ran the Axsym test on appellant’s blood serum, rather than whole
blood. Section 724.064 of the transportation code provides, in relevant part: “On the trial
of a criminal proceeding . . . involving the operation of a motor vehicle . . . evidence of the
alcohol concentration . . . as shown by analysis of a specimen of the person’s blood . . .
is admissible.” Tex. Transp. Code Ann. § 724.064 (Vernon 1999).
          Courtney testified that it is possible to approximate blood alcohol level under whole
blood analysis by converting the blood serum result using a mathematical conversion
factor. Courtney stated:
The simplest way is to divide [the blood serum value] by an average ratio,
which would be the average amount of alcohol in serum compared to the
average amount of alcohol in the corresponding whole blood sample. . . . I
use a 1.16. So if I divide the serum concentration by 1.16, that will
approximate the whole blood concentration.
 
          Demeris testified he thought the Texas statute required the use of whole blood. He
stated: “What I have read is that they require blood . . . and there is no inclusion of serum
in the [statute]. . . . So in my experience, that would require whole blood.” 
          The San Antonio Court of Appeals has previously addressed this very issue. See
Reidweg v. State, 981 S.W.2d 399, 403 (Tex. App.–San Antonio 1998, pet. ref’d). In
Reidweg, the court held that a blood alcohol test on blood serum is valid because the use
of blood serum is common practice, the test results using blood serum are more accurate,
and the test results are standardized through the test instrument. Id. Because we agree
with the reasoning of our sister court, we hold that the trial court did not abuse its discretion
in determining that the use of blood serum did not make the blood alcohol test unreliable. 
4. Abbott Axsym Analyzer
          Appellant also contends that the Abbott Axsym Analyzer did not accurately measure
appellant’s blood alcohol level. The State asserts it showed by clear and convincing
evidence that the Axsym results met all three Kelly factors. 
          The evidence shows that Laura Massey, the hospital medical laboratory technician,
had performed blood alcohol tests for more than fifteen years and was certified to operate
the Abbott Axsym Analyzer. Patricia Prather, Massey’s supervisor, testified that at the time
of Jessup’s blood test, (1) the hospital was certified by the Health Care Finance
Administration and surveyed by the Joint Commission of American Hospitals; (2) the
hospital ran at least two levels of quality control daily; (3) the Axsym Analyzer was properly
calibrated; (4) the Axsym Analyzer met the national proficiency standards; and (5) the
hospital conducted two separate blood tests on appellant. Prather said that, although the
hospital had improperly used an alcohol swab, the effects were minimal at best.
          Demeris asserted that the Axsym results were not reliable because the machine
tests selectively, not specifically, for ethyl alcohol. However, Demeris cited no authority,
other than his own opinion, for his assertion.
          We conclude the State met the three Kelly factors by establishing that the Axsym
Analyzer validly tested blood alcohol, the Axsym Analyzer was valid, and Massey properly
used the Axsym Analyzer to test appellant’s blood for alcohol concentration. See Kelly,
824 S.W.2d at 573. Accordingly, the trial court did not abuse its discretion in allowing the
Axsym results to be presented to the jury.
          Accordingly, we overrule appellant’s second and third points of error.
D. Retrograde Extrapolation
          In his fourth point of error, appellant complains the trial court abused its discretion
in admitting retrograde extrapolation evidence presented by Max Courtney because the
State did not prove by clear and convincing evidence that Courtney’s retrograde
extrapolation evidence was reliable. Specifically, appellant challenges the reliability of the
extrapolation evidence because: (1) the hospital blood alcohol tests were not accurate; (2)
Courtney did not use any of appellant’s individual characteristics in calculating his result;
(3) Courtney did not know with certainty the time of appellant’s last drink; (4) Courtney
improperly used a one-hour absorption phase peak factor in his calculations; and (5)
Courtney did not demonstrate a thorough knowledge of the science. The State argues that
it showed by clear and convincing evidence that Courtney’s extrapolation results were
reliable. See Mata v. State, 46 S.W.3d 902 (Tex. Crim. App. 2001).
          In Mata, the court of criminal appeals explained retrograde extrapolation as follows:
Retrograde extrapolation is the computation back in time of the blood-alcohol
level – that is, the estimation of the level at the time of driving based on a
test result from some later time. 
 
As alcohol is consumed, it passes from the stomach and intestines into the
blood, a process called absorption. . . . At some point after drinking has
ceased, the person’s [blood alcohol concentration] will reach a peak. After
the peak, the [blood alcohol concentration] will begin to fall as alcohol is
eliminated from the person’s body. The body eliminates alcohol through the
liver at a slow but consistent rate.
 
Id. at 908-09. The Mata court then established certain guidelines for the use of retrograde
extrapolation evidence. Retrograde extrapolation is reliable if: (1) the expert can apply the
science and explain it with clarity to the court; (2) the expert demonstrates some
understanding of the difficulties associated with the science; and (3) the expert can clearly
and consistently apply the science. Id. at 916. In evaluating the reliability of the results,
a court should also consider: (1) the length of time between the offense and the test; (2)
the number of tests given and the length of time between each test; and (3) what extent
any individual characteristics


 of the defendant were known to the expert. Id. 
          The record reflects the following:
(1)      The trial court determined that the hospital blood tests were reliable.
 
(2)      Courtney explained absorption and elimination rates in detail.
 
(3)      Courtney used a time of approximately 3:30 a.m. as the time of
appellant’s last drink because appellant gave emergency room
personnel that time as the time of his last drink, eyewitness testimony
corroborated that time, and appellant’s three blood tests were
consistent with that time.
 
(4)      Based on published scientific studies, Courtney used .015 to .018 as
an elimination rate conversion factor and used a one-hour peak time. 
This rate is based on published scientific studies. 
 
(5)      Courtney clearly explained the assumptions he factored into his
scientific data and any errors inherent in extrapolation science.
 
(6)      Courtney used three blood alcohol tests in his calculations, and the
calculations exhibited a consistent pattern.
 
(7)      The State provided Courtney with appellant’s individual
characteristics: (a) his weight, (b) drinking patterns, (c) time of last
drink, and (d) time of last meal. Courtney stated that these
characteristics would not significantly change his calculations.
 
(8)      Courtney’s calculations did not have any mathematical errors.
 
The record shows that Courtney: (1) had a thorough understanding of the science behind
retrograde extrapolation, (2) provided a clear explanation of the advantages and
disadvantages associated with this science, and (3) was able to consistently apply the
science.
          Although the hospital conducted the first blood test four hours after the accident, we
conclude that Courtney’s extrapolation results are relevant and admissible. The time gap
of four hours goes to the weight of the evidence, not the admissibility. As fact finder, the
jury is the exclusive judge of the credibility of the witnesses and the weight to be afforded
their testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1981); Chambers v. State,
805 S.W.2d 459, 461 (Tex. Crim. App. 1991).
          Accordingly, we hold the trial court did not abuse its discretion in finding that
Courtney’s extrapolation results were valid and reliable. Further, we hold the trial court did
not abuse its discretion in admitting the State’s retrograde extrapolation evidence. 
Appellant’s fourth point of error is overruled.
          The trial court’s judgment is affirmed.


                                                                           FEDERICO G. HINOJOSA
                                                                           Justice


Do not publish. See Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and filed this
the 10th day of November, 2004.