**Robert Randall KRAUSE, Appellant**

v.

**The STATE of Texas.**

**No. PD–0819–12.**

Court of Criminal Appeals of Texas.

May 8, 2013.

Rehearing Denied Aug. 21, 2013.

John Dennis Hester Houston, TX, for Appellant.

Rachel Ann Palmer, Assistant District Attorney, Houston, TX, Lisa C. McMinn, State's Attorney, Austin, for the State.

KELLER, P.J., delivered the opinion of the Court in which JOHNSON, KEASLER, HERVEY, COCHRAN and ALCALA, JJ., joined.

After appellant was arrested for driving while intoxicated, his blood was drawn at a hospital by Rachel Lopez. Although Lopez's job title was "emergency medical technician" and she was licensed as an EMT–I, her primary duty at the hospital was to draw blood in non-emergency situations. The questions in this case are whether, under § 724.017 of the Transportation Code, Lopez was "emergency medical services personnel" and, if so, whether that fact renders her unable to be a "qualified technician" authorized to take blood specimens in driving-while-intoxicated cases. After reviewing Lopez's job duties, we hold that she was not "emergency medical services personnel" and that she was a "qualified technician" within the meaning of the statute. We reverse the judgment of the court of appeals.

## I.  BACKGROUND

### A.  The Arrest and Trial Court Ruling

The basic facts of this case are undisputed. On January 26, 2011, appellant was involved in a vehicle accident and was arrested for driving while intoxicated. One of the other people involved in the accident was taken to the hospital. Because of this,[1] without the police obtaining a warrant, appellant was taken to a hospital so that a mandatory, involuntary blood specimen could be taken. There, appellant's blood was drawn by Rachel Lopez, an employee of the hospital and an Emergency Medical Technician–Intermediate ("EMT–I"). Appellant's blood-alcohol content was 0.23.

Appellant moved to suppress the results of the blood test, arguing that Lopez was not a person authorized by § 724.017 of the Transportation Code to take a blood specimen. Specifically, appellant contended that Lopez was not a "qualified techni-

---

1. *See* Tex. Transp. Code Ann. § 724.012(b)(1)(C).

cian" within the meaning of the statute because she was part of the hospital's "emergency medical services personnel." Section 724.017(a) provides:

Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter.

Section 724.017(c) says:

In this section, "qualified technician" does not include emergency medical services personnel.

A hearing was held on the motion, and Lopez testified.

Following the hearing, the trial court issued findings of fact and conclusions of law, which included the following: 1) Lopez's testimony was truthful; 2) she was a licensed EMT–I; 3) she was employed by the hospital for approximately six years; 4) as an EMT–I, she was trained to draw blood, start IV's, do tracheotomies, and start intubation; 5) her duties in the hospital's emergency room were limited to drawing blood, but she was occasionally called to other parts of the hospital to start IV's; 6) she was also trained as an EMT–Basic, a lower paraprofessional license; 7) when taking blood for a law-enforcement officer she used a kit provided by the officer; and 8) appellant's blood was taken in a sanitary place, by one trained to do so, and in a reasonable manner.

The transcript of the proceedings established that Lopez's primary duty at the hospital was drawing blood. Lopez conducted anywhere from fifty to one-hundred blood draws per day, and she had drawn blood during the entire time she was employed at the hospital. She maintained her own office at the hospital where she conducted the blood draws. Lopez was familiar with and explained the process by which a blood specimen is taken in driving-while-intoxicated cases when requested by a law-enforcement officer. Moreover, after the time Lopez drew appellant's blood but before the suppression hearing, the hospital instituted new policies that changed the job titles of some of its staff, including Lopez, whose job title changed from EMT–I to Patient Care Technician, Level 1. This change in job title required no additional training or duties.

The trial court never explicitly concluded that Lopez was a "qualified technician" under the statute, nor was there any express testimony from Lopez to that effect. The trial court denied appellant's motion to suppress. Following that denial, appellant pled guilty to driving while intoxicated and was sentenced to the Harris County Jail for one-hundred eighty days, probated for eighteen months.

### B. Court of Appeals's Opinion

The court of appeals reversed the trial court's judgment and remanded the case for a new trial.[2] It held that the language of § 724.017 was plain, and it clearly excluded Lopez, an EMT–I, from being a qualified technician able to take a blood specimen from appellant.

The court stated that it was troubled by the fact that the statute excluded emergency medical services personnel such as Lopez, considering that she was "more qualified to take a blood specimen than some other non-emergency medical services personnel who have been deemed to be 'qualified technicians' under Section 724.017(a)."[3] The court nevertheless concluded that, notwithstanding its undesirable consequences in particular cases, because the statute laid out a bright-line rule, it did not produce an absurd result that the legislature could not possibly have

---

**2.** *Krause v. State*, 368 S.W.3d 863, 864 (Tex. App.–Houston [14th Dist.] 2012, pet. granted).

**3.** *Id.* 867 (citing cases).

intended.[4] Ultimately, the court reasoned that anyone licensed and titled as an EMT–I, who works in an emergency room, and is trained in providing emergency services, is unambiguously excluded by the statute, no matter his qualifications to take blood specimens.[5]

Concluding that the statute was plain in its meaning, the court of appeals stated that resort to legislative history was unwarranted.[6] It nevertheless went on to discuss the legislative history of the statute to show that reliance on it by the State was not helpful in any event.[7] The State had argued that a statement in the bill analysis indicated that emergency medical services personnel were excluded so that blood draws taken in ambulances would not be considered to have been taken in a sanitary place. Rejecting the State's reliance on this part of the legislative history, however, the court of appeals reasoned that if the legislature had "wanted to prevent blood draws from being conducted in certain locations, it could have expressed that intent clearly in the statute without categorically excluding an entire class of medical services personnel."[8]

## II. ANALYSIS

### A. Standard of Review and Principles of Statutory Construction

Because the historical facts are not disputed, and because statutory construction is a question of law, we review the trial court's ruling on the motion to suppress *de novo*.[9] When interpreting the meaning of a statute, we seek to effectuate the collective intent of the legislators who enacted the statute.[10] However, if the text of the statute is ambiguous or would lead to absurd consequences that the legislature could not possibly have intended, we may consider extra-textual sources, such as the legislative history and the consequences of a particular construction.[11]

### B. Deciphering the Text of the Statute

Lopez's job title was "EMT–I" but her job did not involve emergencies. Her job was that of a phlebotomist, which is a technician who draws blood. Moreover, while an EMT–I is defined as emergency services personnel for purposes such as travel reimbursement, that definition is not applicable to § 724.017.[12]

Two courts of appeals have held that phlebotomists are "qualified technicians" within the meaning of § 724.017, provided that their qualifications are established on the record.[13] In *Torres v. State*,[14] the defendant was charged with driving while intoxicated and his blood was drawn by a phlebotomist on staff. Implicit in the court of appeals's decision is a conclusion that a

4. *Id.*

5. *Id.* at 867.

6. *Id.* at 869.

7. *Id.* at 869–70.

8. *Id.* at 869.

9. *Mahaffey v. State*, 364 S.W.3d 908, 912–13 (Tex.Crim.App.2012).

10. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

11. *Id.; see also* Tex. Gov't Code Ann. § 311.023(3), (5).

12. *See, e.g.,* Gov't Code § 660.209; *see also Ex parte Ruthart*, 980 S.W.2d 469, 472 (Tex.Crim. App.1998) ("We will not extend a definition beyond the chapter or article to which it is expressly limited.").

13. *See Cavazos v. State*, 969 S.W.2d 454, 456 (Tex.App.–Corpus Christi 1998, pet. ref'd) (holding that the State failed to meet its burden of establishing that the phlebotomist that took the defendant's blood was a qualified technician because no one testified regarding

phlebotomist is a technician within the meaning of the statute.[15]

And in *State v. Bingham,*[16] the defendant was arrested for driving while intoxicated and taken to a hospital where a phlebotomist drew his blood. A blood test showed he was over the legal blood-alcohol limit. The court of appeals concluded that the phlebotomist was a qualified technician within the meaning of the statute and stated, "The common-sense interpretation of the term 'qualified technician,' ... must include a phlebotomist who a hospital or other medical facility has determined to be qualified in the technical job of ... phlebotomy, i.e., the drawing of blood." [17]

■ The record in this case shows that Lopez's primary duties were that of a phlebotomist and that she was qualified to be so. Lopez was trained to draw blood, and her primary duty at the hospital for the six years she was employed there was to draw blood. Lopez took anywhere between fifty to one-hundred blood draws *per day,* and she maintained her own office at the hospital to do exactly that. When asked if drawing blood was part of her "daily chore[s]" at the hospital, Lopez replied, "Yes, ma'am. It's all I do." [18] Lopez also explained the procedure used to take blood specimens when directed to do so by police officers in driving-while-intoxicated cases, and she affirmed that she knew how to use the kit and equipment provided by the police officers to take such specimens. Lopez was qualified within the meaning of the statute.

The record also confirms that, functionally, Lopez was not emergency medical services personnel. It is true that Lopez had training in general emergency procedures. She also was licensed as an EMT–I and had that title at the hospital. But that training and her license and title had little to do with what she *actually did* at the hospital, which was almost exclusively drawing blood. Her new title of Patient Care Technician, Level 1, required no additional training or duties and is substantively indistinguishable from her previous position. From the perspective of the hospital, Lopez was not treated as an EMT–I or part of its emergency medical services personnel, but instead as a *de facto* phlebotomist. Because Lopez did not function as emergency services personnel, § 724.017(c) and its restrictions on emergency services personnel are not applicable in this case.

## C. *State v. Laird* is Inapplicable

The court of appeals relied heavily on *State v. Laird* [19] for its holding. We are not bound by *Laird,* a court of appeals opinion, but because of its influence on the court below we address its applicability to this case.

In *Laird,* the defendant was charged with intoxication manslaughter and failure to stop and render aid after he struck and

the phlebotomist's qualifications, and no other evidence was offered to establish that the blood was drawn by someone the hospital considered qualified to perform that task).

14. 109 S.W.3d 602 (Tex.App.–Fort Worth 2003, no pet.).

15. *Id.*

16. 921 S.W.2d 494 (Tex.App.–Waco 1996, pet. ref'd).

17. *Id.* at 496.

18. At another point in her testimony, Lopez also stated that she takes urine samples and starts IV's. But throughout her testimony, Lopez said that her primary duty at the hospital is taking blood samples.

19. 38 S.W.3d 707 (Tex.App.–Austin 2000, pet. ref'd).

killed a pedestrian with his truck.[20] A responding police officer took Laird to an emergency room to have his blood drawn.[21] Laird refused to consent to the blood draw, and, as a result, the emergency-room physicians refused to take a specimen.[22] The officer was then instructed by his superior to take Laird to the central fire station where a paramedic would take a blood sample.[23] The officer did so and Laird again refused to comply.[24] This time, however, another officer swept Laird's feet from under him, he fell to the ground, and he was pinned down by the officers on the floor of the fire station while the paramedic took the blood sample.[25] The trial court granted Laird's motion to suppress, and the court of appeals affirmed.[26]

In spite of superficial similarities, *Laird* is inapplicable to the instant case. It is true that the court in *Laird* rejected the idea that a paramedic in a hospital could be considered a qualified technician. But that observation had nothing to do with the facts in *Laird*, so it was merely *dicta*.

Furthermore, even if the paramedic in *Laird* could be said to have been qualified under § 724.017, the blood draw still would have been inadmissible under the statute because of where it was taken. The statute requires that the blood specimen be taken in a "sanitary place." The specimen in *Laird* was taken on the floor of a fire station, a place so obviously not sanitary within the meaning of the statute that it would need little discussion to conclude that the statute was not complied with.

### III. Conclusion

The court of appeals was mistaken to conclude, in spite of its misgivings, that Lopez was excluded from taking a blood specimen in this case. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

JOHNSON, J., filed a concurring opinion.

ALCALA, J., filed a concurring opinion.

PRICE, J., filed a dissenting opinion in which WOMACK, J., joined.

MEYERS, J., did not participate.

JOHNSON, J., filed a concurring opinion.

There seems to be confusion on the meanings of "emergency medical services" (EMS) and "emergency medical technician" (EMT). The governing statute is Health and Safety Code Chapter 773, which "may be cited as the Emergency Health Care Act." *Id.* at § 773.001. Section 773.002 states, "The purpose of this chapter is to provide for the prompt and efficient transportation of sick and injured patients, after necessary stabilization, and to encourage public access to that transportation in each area of the state."

The terms at issue are defined in Section 773.003. " 'Emergency medical services' means services used to respond to an individual's perceived need for immediate medical care and to prevent death or aggravation of physiological or psychological illness or injury." *Id.* at (8). I understand that to mean an entity with employ-

20. *Id.* at 710.
21. *Id.*
22. *Id.*
23. *Id.*
24. *Id.*
25. *Id.*
26. *Id.* at 711, 715.

ees who provide medical assistance as first responders to emergencies such as fires, traffic accidents, heart attacks, strokes, and violent crime. " 'Emergency medical services personnel' means: (A) emergency care attendant; (B) emergency medical technicians; (C) emergency medical technicians—intermediate; (D) emergency medical technicians—paramedic; or (E) licensed paramedic." *Id.* at (10). All of these definitions must be considered in the context of the statute: "to provide for the prompt and efficient transportation of sick and injured patients, after necessary stabilization...."[1] *Id.* at (10). I understand this to mean the medically trained persons who are employed by an emergency medical service to transport an ill or injured person.[2]

The enumerated types of emergency medical services personnel in Section 773.003 are based on the level of training. Sections 773.046–773.0495 set out the standards for such personnel. An emergency care attendant must be certified as "minimally proficient to provide emergency prehospital care by providing initial aid that promotes comfort and avoids aggravation of an injury or illness," otherwise known as first aid. Such a person is not required to have a high-school diploma or a GED. Section 773.046. Escalating training levels are required for the other categories, with paramedics being "minimally proficient to

provide advanced life support that includes initiation under medical supervision of certain procedures," including intravenous therapy, intubation, defibrillation, and drug therapy and must also have completed "a curriculum that includes college-level course work...." Section 773.0495.

The person who drew appellant's blood, Ms. Lopez, was classified by her employer, the hospital, as an EMT–I. Such a person is certified "as minimally proficient to provide emergency prehospital care by initiating under medical supervision certain procedures, including intravenous therapy and endotracheal or esophageal intubation." Section 773.048. Presumably, if she is "minimally proficient" at inserting an IV needle into a vein, she is also "minimally proficient" at inserting a needle into a vein to withdraw a sample of blood.[3] A change of job title by her employer did not affect her standing as an EMT–I.

It is clear from the language of the statute that the legislature intended to regulate those who transport patients from the scene of the injury to a hospital. Ms. Lopez was in no way involved in the transportation of injured or ill patients and so, by the clear language of the statute, is not "emergency medical services personnel" for the purposes of Transportation Code § 724.017. She was employed by the hospital to draw samples of blood, was qualified to do so, and had an office in the hospital

1. Of the 17 statutes other than Transp. Code § 773 in which the phrase "emergency medical services personnel" appears, ten specify that it is as defined in 773.003, and one defines the term as an individual certified by the Department of State Health Services. One expands the definition to include hospital emergency facility staff in the event of a major disaster. The remaining five use the phrase without a stated definition.

2. "Emergency medical services personnel" is not synonymous with "EMT." EMTs are not EMTs because they are employed by emergency medical services; they are EMTs because

of their training. EMTs may be employed in hospital emergency rooms and perform procedures as first responders to those who need such assistance and arrive by private transportation. They may also work for private ambulance services that transport sick persons in non-emergency situations, in doctor's offices taking vital-sign data, on location for filming movies, and at sporting events.

3. Phlebotomists, who spend all day every day drawing blood samples for medical tests, are not regulated by the state.

for that purpose. And her office in the hospital was a sanitary place. An ambulance is likely to become an unsanitary place, contaminated with any number of substances such as soot from a fire, exsanguinated blood from the patient or other persons, and dirt, vegetation, and glass fragments from a traffic accident. Under such conditions, the taking of a blood draw by a member of the ambulance crew is not appropriate. The goal of transportation is to get the patient to the hospital alive. Drawing blood for a test for blood-alcohol concentration is probably not high on the to-do list, nor should it be.

I think that Ms. Lopez is just the sort of "qualified technician" that the legislature had in mind when it established rules for who should be performing blood draws pursuant to Texas Transportation Code § 724.017.

With these comments, I join the opinion of the Court.

ALCALA, J., filed a concurring opinion.

I join the majority opinion. I agree that this Court must reverse the judgment of the court of appeals and remand the case of Robert Randall Krause, appellant. I write separately, however, to explain (1) why statutory provisions outside of the Transportation Code should not apply in deciding the meaning of a term used within the Transportation Code, and (2) why I believe that the better practice for this Court would be to clearly set forth a more black-and-white rule that would be more understandable for police officers and trial courts with respect to phlebotomists.

## I. Comparison of Transportation Code and Health and Safety Code

It is clear that Rachel Lopez, the person who drew appellant's blood, was a "qualified technician" within the ordinary meaning of that term. She was hired by the hospital where she had worked for six years and where her duties were limited to drawing blood. She drew 50 to 100 blood samples each day there. She had also completed one semester of coursework at San Jacinto College North, a local community college. This coursework, combined with her practical experience at the hospital, qualified Lopez to conduct a variety of medical procedures, including blood draws, cardiopulmonary resuscitation, electrocardiograms, intravenous therapy, intubation, and tracheotomies. It would seem irrational to say that she was a not "qualified technician" as that term is ordinarily understood.

The disposition of this appeal rests on the Legislature's intent to exclude someone like her from drawing blood when she was acting as "emergency medical services personnel." *See* Tex. Transp. Code § 724.017. Section 724.017 of the Texas Transportation Code states, "Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen. . . ." *Id.* It also provides that "qualified technician" does not include "emergency medical services personnel." *Id.* "Emergency medical services personnel" is not defined in the Transportation Code. *See id.* That term is defined, however, in the Texas Health and Safety Code, which states, "In this chapter: . . . '[e]mergency medical services personnel' means: . . . emergency medical technicians—intermediate," which we refer to as "EMT–I." Tex. Health & Safety Code. § 773.003(10)(C). If the definition in the Texas Health and Safety Code applies to the Transportation Code, then Lopez must be deemed unqualified. If that definition does not apply, then this Court must determine what the term "emergency medical services personnel" does mean. *See* Tex. Transp. Code § 724.017. I con-

**90**

clude that the definition of EMT–I plainly does not apply to the Transportation Code because it expressly applies only to that term as used "in this chapter" of the Health and Safety Code, and nothing in Section 724.017 of the Transportation Code incorporates that definition. *See* Tex. Health & Safety Code § 773.003(10)(C); Tex. Transp. Code § 724.017.

Furthermore, it does not appear that the Legislature would have intended that the EMT–I definition apply to Lopez's employment with the hospital because the EMT–I license applies to emergency prehospital care, and she was not employed or functioning in that capacity when she drew appellant's blood during the course of her employment at the hospital. The Texas Health and Safety Code sets forth the qualifications for an EMT–I as follows:

> An individual qualifies as an emergency medical technician-intermediate if the individual is certified by the department as minimally proficient to provide emergency prehospital care by initiating under medical supervision certain procedures, including intravenous therapy and endotracheal or esophageal intubation.

Tex. Health & Safety Code § 773.048. The EMT–I license, therefore, indicates that Lopez had met the minimal qualifications to be proficient in "emergency prehospital care." *Id.* Her employment inside the hospital, however, was not as "emergency prehospital care." She was in the hospital's emergency room and not "prehospital." Her license, therefore, qualifies her to perform certain procedures that are performed during "emergency prehospital care," but it does not speak to whether, when she drew appellant's blood, she was acting in the capacity of "emergency medical services personnel" under the Transportation Code. *See* Tex. Transp. Code

§ 724.017. If we were to conclude that her license as an EMT–I forever made her "emergency medical services personnel" as that term is used under the Transportation Code, it would permanently exclude her from performing those services, despite her qualifications and regardless of whether she was in an emergency setting, like an ambulance, or a non-emergency setting, like a doctor's office. Her license, therefore, provides a basis only to conclude that Lopez has met some minimum qualifications and not that she was acting as "emergency medical services personnel" when she drew appellant's blood. I conclude that the type of license held by the person drawing a defendant's blood does not resolve the question whether the person was "emergency medical services personnel."

## II. Black–and–White Rule for Blood Draws Is Preferable

I join the majority opinion to the extent that it holds that Lopez "did not function as emergency services personnel" because what she "*actually did* at the hospital" was "almost exclusively drawing blood," and, from the perspective of the hospital, she was not treated as "emergency medical services personnel." But I would go even further and expressly hold that, in examining the functions of the phlebotomist, (1) evidence of blood draws taken in a prehospital, non-office settings will not, in general, be permitted because individuals in those settings typically are firefighters or ambulance workers who are "emergency medical services personnel," and (2) blood draws in hospital-office settings, like those typically conducted by Lopez unless she was called to another location, are generally favored because they occur outside of the emergency room in rooms specially designated for the specific purpose of drawing blood by the phlebotomist of the hospital. I would also caution police

officers and trial courts that it is unclear whether someone who is employed by the hospital in one capacity, like Lopez who is the phlebotomist assigned to draw blood, may become "emergency medical services personnel" if she is providing emergency services. Here, according to the trial court's findings of fact and conclusions of law, Lopez had "duties in the LBJ Hospital emergency room," as well as duties outside of the emergency room. It is not difficult to envision a time when she would be functioning as part of the hospital's "emergency medical services personnel" who are providing emergency care to patients. In my view, the majority opinion leaves unanswered the question of whether, in examining the functions of an employee, a court must also consider what the employee was actually doing when the officer asked for the blood draw. Here, nothing in the record suggests that Lopez was providing emergency services or even that the blood draw occurred in the emergency room. In this case, she was clearly functioning in a non-emergency situation, and the record suggests that the blood draw occurred outside of the hospital's emergency room. Because of the potential difficulty this Court may face in attempting to

characterize the function of a phlebotomist who is drawing blood in an emergency room, the better practice would be for blood draws to occur in an office within the hospital rather than in the emergency room.

With these comments, I join the majority opinion.

PRICE, J., filed a dissenting opinion in which WOMACK, J., joined.

Rachel Lopez was not a physician, chemist, registered professional nurse, or licensed vocational nurse. If she was authorized to draw the appellant's blood under the statute, it could only be by virtue of her status as a "qualified technician."[1] The statute does not define this term, but it does expressly provide that it "does not include emergency medical services personnel."[2] Lopez received her training in blood extraction in her capacity as an Emergency Medical Technician–Intermediate (EMT–I).[3] Insofar as the record reveals, she has no training to draw blood in any other capacity.[4] Thus, while Lopez may be perfectly competent to do so, I agree with the court of appeals that the statute plainly excludes her from drawing

1. *See* Tex. Transp. Code § 724.017(a) ("Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter.").

2. *See* Tex. Transp. Code § 724.017(c) ("In this section, 'qualified technician' does not include emergency medical services personnel.").

3. The trial court expressly found that, "[a]s an EMT–I, [Lopez] is trained to draw blood[.]"

4. As Judge Johnson points out in her concurring opinion, the Texas Health and Safety Code specifically defines "emergency medical services personnel" to include "emergency medical technicians—intermediate." Con-

curring Opinion at 83 (citing Tex. Health & Safety Code § 773.003(10)(C)). Thus, Lopez unquestionably constituted "emergency medical services personnel" in contemplation of the Transportation Code provision at issue here. The State did not contend otherwise in the court of appeals, declining to argue "that the statutory phrase 'emergency medical services personnel' cannot encompass a licensed 'emergency medical technician-intermediate' such as Lopez." *Krause v. State*, 368 S.W.3d 863, 866 (Tex.App.–Houston [14th Dist.] 2012). "Rather, the State contends that an emergency medical technician who works in a hospital and regularly performs blood draws should not be classified as 'emergency medical services personnel' for purposes of" the Transportation Code. *Id.* For the reasons that follow, I disagree.

blood for purposes of Chapter 724 of the Transportation Code.[5]

Even so, the Court holds today that the court of appeals erred to rely on this plain language from the statute because Lopez's experience in drawing blood, and the hospital setting in which she had done so for her six years of employment there, rendered her "a *de facto* phlebotomist"—and phlebotomists have been held to satisfy the criteria for a "qualified technician" under the statute.[6] But there was no evidence that Lopez had been trained or certified specifically as a phlebotomist.[7] Suppose that, as part of her six years' employment at the hospital, Lopez had been serving as a *de facto* nurse, chemist, or even physician. I do not think it likely the Court would hold that she was authorized to draw blood for Chapter 724 purposes in any of *those* capacities. It is not clear to me why a *de facto* phlebotomist should count as a "qualified technician"—especially one who received her training in the

extraction of blood only as an EMT—I, given that emergency medical services personnel are expressly excepted from the category of "qualified technician."

I do not mean to suggest that, had the evidence shown that Lopez was *both* an EMT–I *and* a certified phlebotomist, the appellant's motion to suppress should still have been granted. Not at all. That the term "qualified technician" may not be construed to "include emergency medical services personnel" does not necessarily mean that someone who is trained as *both* an EMT–I *and* a certified phlebotomist may not draw blood under Chapter 724. At best, Section 724.017(c) is ambiguous with respect to this particular question, and I very much doubt that the Legislature would wish us to construe it to rule out a certified phlebotomist who also just happened to be an EMT–I. But the State did not establish that Lopez was actually trained as a phlebotomist, *per se*, and I am no more inclined to think that the Legisla-

5. *Krause, supra*, at 866–70. Indeed, if it were not the case that at least *some* emergency medical services personnel are competent to draw blood for Chapter 724 purposes, there would have been no need for the Legislature expressly to exclude them from this function, since it would presumably have been clear that they could never constitute "qualified technicians" under Section 724.017(a).

6. *See* Majority Opinion at 85–86 (citing *Cavazos v. State*, 969 S.W.2d 454, 456 (Tex.App.–Corpus Christi 1998, pet. ref'd)) (the State must show that a particular "phlebotomist" is "qualified" to draw blood in order to satisfy Section 724.017(a)); *Torres v. State*, 109 S.W.3d 602, 605 (Tex.App.–Forth Worth 2003, no pet.) (certified phlebotomist is a "qualified technician" for purposes of Section 724.017(a)); *State v. Bingham*, 921 S.W.2d 494, 495–96 (Tex.App.–Waco 1996, pet. ref'd) (witness was a "qualified technician" for Chapter 724 purposes by virtue of testimony that she was a trained and experienced phlebotomist).

It is telling that, in its articulation of the standard by which we conduct statutory con-

struction, the Court makes no mention of the principle that, while effectuating legislative intent is the ultimate goal, the literal language of the statute, when plain, is the best indicator of that intent. *E.g., Tapps v. State*, 294 S.W.3d 175, 177 (Tex.Crim.App.2009). *See* Majority Opinion at 85.

7. There was testimony in *Bingham* that phlebotomists are not subject to licensing requirements in Texas. 921 S.W.2d at 496. Insofar as my research reveals, that is still the case. *But see* Tex. Civ. Prac. & Rem.Code § 104.001 (providing for indemnity by the State under certain circumstances to "a phlebotomist licensed in this state ..."). Nevertheless, phlebotomy is a discrete discipline, subject to formal classroom training by accredited institutions, minimum supervised clinical experience, and an exam for certification. *See, e.g.,* American Society of Phlebotomy Technicians, *Phlebotomy Certification* (last visited May 6, 2013), http://aspt.org/phlebotomy.html. There is no evidence in the record that Lopez satisfied any of these criteria.

ture intended to authorize Chapter 724 blood draws from *de facto* phlebotomists than from *de facto* doctors, chemists, or nurses.

I suspect that the Court is influenced in its consideration of this case by what it regards as the evident purpose behind Section 724.017(c). The Legislature has expressly provided that "[t]he blood specimen must be taken in a sanitary place."[8] Obviously, the Legislature did not prefer for Chapter 724 blood draws to be conducted amidst the chaos and questionable cleanliness of a roadside accident scene, in the back of a barreling ambulance, or, as in *State v. Laird*,[9] on the filthy floor of a fire station—conditions under which emergency medical service personnel are sometimes constrained by exigency to operate. But, the Court seems to reason, because of Lopez's apparent competence and the fact that all of her blood draws take place in the relatively tranquil and antiseptic environment of a hospital, she may be found to fit the definition of "qualified technician," notwithstanding Section 724.017(c)'s express exclusion of emergency medical services personnel from that definition. Like the court of appeals, I reject this reasoning.[10] Assuming that assuring safety and sanitation was indeed the impetus for the Legislature's express exclusion of emergency medical services personnel from the definition of "qualified technician," it was certainly within the legislative prerogative to take a categorical view of the matter and paint with a brush that was broader than strictly necessary to achieve its objective. That is what Section 724.017(c) plainly does; it categorically prohibits EMT–Is from drawing blood, though many of them are competent to do so and can often get it done under conditions that are perfectly safe and sanitary. The Court may prefer a lighter touch, but that is not for us to say when the language of a statute is as plain—and plainly categorical—as this one.[11]

Under Section 724.017(c), emergency medical technicians *qua* emergency medical technicians may not extract blood for purposes of Chapter 724 of the Transportation Code. Because that was the only capacity in which Lopez was trained to perform blood draws, she is plainly excluded from serving in that function. I would therefore affirm the judgment of the court of appeals. Because the Court does not, I respectfully dissent.

---

8. Tex. Transp. Code § 724.017(a).

9. 38 S.W.3d 707 (Tex.App.–Austin 2000, pet. ref'd).

10. *Krause, supra,* at 869.

11. *See Tapps, supra,* at 177 (unambiguous statutes must be understood to mean what they say, and it is not for reviewing courts to add or subtract from their clear language).