

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-77,055

### RANDALL WAYNE MAYS, Appellant

### v.

### THE STATE OF TEXAS

### ON APPEAL FROM THE DENIAL OF A MOTION
### TO DETERMINE EXECUTION COMPETENCY
### FROM CAUSE NO. B-15,717 THE 392ND DISTRICT COURT
### HENDERSON COUNTY

HERVEY, J., delivered the opinion of the Court in which JOHNSON, KEASLER, ALCALA, RICHARDSON, YEARY, and NEWELL, JJ., joined. KELLER, P.J., filed a dissenting opinion in which MEYERS, J., joined.

## O P I N I O N

Appellant was convicted of capital murder and sentenced to death. He subsequently challenged his competency to be executed. The trial court denied Appellant's motion because he failed to make a substantial showing of execution incompetence. Appellant now argues that the trial court erred. We agree. Because we hold that Appellant did make a substantial showing that he is incompetent to be executed, we

set aside the order of the court denying relief and remand this cause to the trial court for further competency proceedings, including the appointment of mental-health experts. The current stay of execution shall remain in effect pending the outcome of the competency proceedings in the trial court.

## I. BACKGROUND

In May 2008, Appellant was sentenced to be executed after he shot and killed a sheriff's deputy.[1] This Court affirmed his conviction and sentence and later denied his application for a writ of habeas corpus. *Mays v. State*, 318 S.W.3d 368, 397 (Tex. Crim. App. 2010); *Ex parte Mays*, WR-75,105-01, 2011 WL 1196799 (Tex. Crim. App. Mar. 16, 2011) (per curiam) (not designated for publication). His execution was set for March 18, 2015.

On February 10, 2015, less than a month before the date of execution, the Office of Capital Writs (OCW) became aware of Appellant's case and began investigating the possibility of pursuing additional state litigation on his behalf.[2] Three days after OCW began its investigation, it filed a motion requesting that Appellant's date of execution be modified or stayed so that Appellant would have the opportunity to challenge his competency. On February 19, the court held a hearing on Appellant's motion to modify or

---

[1]We have previously discussed the facts of this case in Appellant's direct appeal. *Mays v. State*, 318 S.W.3d 368, 372–75 (Tex. Crim. App. 2010).

[2]OCW became aware of Appellant's case after it received an email from one of Appellant's trial counsel, as well as "other people in the defense community . . . ."

stay and denied it. It was agreed, however, that OCW would file the competency motion on February 24, and the court would hold a hearing on the competency motion three days later. Due to the imposed time constraints, Appellant was able to rely only on affidavits to meet his threshold burden of proof at that hearing.[3] The court did, however, entertain arguments from the parties. At the conclusion of the hearing, the court denied Appellant's motion, finding that Appellant had raised "some doubt," but had not made a substantial showing.

## II. PRINCIPLES OF EXECUTION COMPETENCY

"A person who is incompetent to be executed may not be executed." TEX. CODE CRIM. PROC. art. 46.05(a); *Ford v. Wainwright*, 477 U.S. 399, 409–10 (1986). A defendant is incompetent to be executed if (1) he does not understand that he is to be executed and that his execution is imminent, and (2) he does not understand the reason for

---

[3]The record shows that counsel for Appellant sought to have his retained expert personally visit with Appellant but was unable to do so,

> [O]ne of the reasons we're asking for the stay, a short -- not a stay but a modification is, if this Court -- one, it would be -- it would be wonderful to have the expert go to Polunsky and interview [Appellant]. We're not going to have time to do that if we have to file by next Wednesday [February 25, 2015]. And we have to file by next Wednesday for the Court of Criminal Appeals to have a chance to review this, if this Court denies the motion.
> So barring that, we're going to have to just have our expert review files and letters, historical and some current, and opine to you that there has been a substantial showing of that, and then hopefully you'll say the same thing.
> This all has to take place before March 18th[, 2015, Appellant's scheduled execution date]. That's a lot of moving pieces to be done by March 18th.

his execution.[4] TEX. CODE CRIM. PROC. art. 46.05(h).

Article 46.05 of the Texas Code of Criminal Procedure provides the procedure by which a defendant can prove he is incompetent to be executed, and it can be broken into two discrete stages. First, a defendant has a threshold burden to make a substantial showing of execution incompetency. Once this threshold burden has been satisfied, a defendant is entitled to further proceedings (the second stage) in accordance with Article 46.05 and the Due Process Clause of the Fourteenth Amendment.[5] TEX. CODE CRIM. PROC. art. 46.05(f) (requiring further proceedings after a defendant makes a substantial showing of execution incompetency); *Druery v. State*, 412 S.W.3d 523, 533–34 (Tex. Crim. App. 2013).

"[A] 'substantial showing' requires more than 'some evidence' of incompetency, but less than establishing incompetency by a preponderance of the evidence." *Druery*, 412 S.W.3d at 537. Because this threshold stage is intended to determine only whether a

---

[4]With respect to the second prong, a defendant does not understand the reason for his execution unless he has a "rational understanding" of that reason. *See Panetti v. Quaterman*, 551 U.S. 930, 959 (2007).

[5]In *Ford*, Justice Powell authored a concurring opinion (that was adopted by the Supreme Court later in *Panetti*), in which he explained that he believed the Florida execution-competency statute violated due process. *Ford*, 477 U.S. at 424 (Powell, J., concurring in part and concurring in judgment). He also opined that, while he did not believe due process required a "full-scale 'sanity trial'" at the time a defendant seeks a stay of execution, once a defendant made a "substantial threshold showing of insanity," due process requires that the defendant have an adequate opportunity to be heard. *Id.* at 425; *see id.* at 424 ("As Justice O'Connor states, "[i]f there is one 'fundamental requisite' of due process, it is that an individual is entitled to an 'opportunity to be heard.'"); *see Panetti*, 551 U.S. at 949 (adopting Justice Powell's concurring opinion in *Ford*).

defendant is entitled to further proceedings[6]—not to be adversarial—if the court must

resolve disputed material facts or weigh conflicting credible evidence, then the defendant

has met his substantial-showing burden. *Id.* at 540. In making its ruling, the court must

consider the defendant's competency motion, attached documents, any responsive

pleadings, and whether there is a presumption of competency due to a previous filing

under Article 46.05.[7] TEX. CODE CRIM. PROC. art. 46.05(d).

The second stage is a final, adversarial hearing at which a defendant has to prove

by a preponderance of the evidence that he is incompetent to be executed.[8] At this

hearing, and unlike at the threshold stage, the fact finder must consider competing

---

[6]Once a defendant has made a substantial showing that he is incompetent to be executed, he must be given a meaningful opportunity to be heard and an "'adequate opportunity to submit expert evidence in response.'" *Green v. State*, 374 S.W.3d 434, 440 (Tex. Crim. App. 2012) (quoting *Panetti*, 551 U.S. at 949); *see* TEX. CODE CRIM. PROC. art. 46.05(f); *see also supra*, note 5.

[7]Under the statute, a presumption of competency arises only if the defendant has previously filed a motion under Article 46.05 and was determined to be competent. TEX. CODE CRIM. PROC. art. 46.05(e). However, we note that, in a defendant's Article 46.05 motion, he must identify *any* previous proceeding challenging his competency, not just previous proceedings dealing with execution competency, including sanity at the time of the offense, competency to stand trial, and competency to be executed. *Id.* art. 46.05(c).

[8]Article 46.05(k) governs the second (and final) stage of execution-incompetency proceedings,

> The trial court shall determine whether, on the basis of reports provided under Subsection (i), the motion, any attached documents, any responsive pleadings, and any evidence introduced in the final competency hearing, the defendant has established by a preponderance of the evidence that the defendant is incompetent to be executed. If the court makes a finding that the defendant is not incompetent to be executed, the court may set an execution date as otherwise provided by law.

TEX. CODE CRIM. PROC. art. 46.05(k).

credible evidence of competency and resolve the ultimate issue of whether the defendant is incompetent to be executed. TEX. CODE CRIM. PROC. art. 46.05(k) (requiring a court to consider, among other things, the expert's reports and "any evidence introduced at the final competency hearing"); *see also Green*, 374 S.W.3d at 444 (evidence at final hearing supported "a finding of competency *or* incompetency").

### III. SUBSTANTIAL-SHOWING DETERMINATION STANDARD OF REVIEW

Before we can determine whether Appellant made a substantial showing of execution incompetence, we must decide the standard by which we will review a lower court's substantial-showing determination.

### A. The arguments of the parties

Appellant argues that whether he made a substantial showing of execution incompetency is a mixed question of law and fact, but because the finding does not turn on evaluations of credibility and demeanor, it should be reviewed de novo, not for an abuse of discretion. The State responds that a determination of execution competency is a factual question that turns on credibility and demeanor; therefore, the court's decision of whether a defendant met that threshold burden should be reviewed for an abuse of discretion. Alternatively, the State argues that, even if the question of substantial showing is not a question of fact, the highly deferential abuse-of-discretion standard nonetheless applies because the determination is a mixed question of law and fact that requires credibility and demeanor determinations.

**B. General principles of appellate standards of review**

The appropriate standard of review to apply on appeal depends on the type of question to be examined, and we have discussed four different kinds of questions: (1) questions of fact, (2) questions of law, (2) application-of-law-to-fact questions (sometimes called mixed questions) that turn on credibility and demeanor, and (4) application-of-law-to-fact questions not turning on credibility and demeanor. *See Absalon v. State*, 460 S.W.3d 158, 162 (Tex. Crim. App. 2015).

When dealing with issues of historical fact, reviewing courts must determine whether the evidence, when viewed in the light most favorable to the court's ruling, supports the finding of fact (or implied finding of fact). *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). "The reason that reviewing courts defer to the trial court's factual determinations is precisely because the judge is 'Johnny-on-the-spot,' personally able to see and hear the witnesses testify." *Manzi v. State*, 88 S.W.3d 240, 254 (Tex. Crim. App. 2002) (Cochran, J., concurring). And, although mixed questions contain elements of fact and law, we have said that when a mixed question turns on credibility and demeanor, a deferential standard still applies because "the issue involves the credibility of a witness, thereby making the evaluation of that witness' demeanor important . . . ." *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997) (citing *Miller v. Fenton*, 474 U.S. 104 (1985)).

On the other hand, the resolution of legal questions depends on this Court's

interpretation of the applicable law. *See Krause v. State*, 405 S.W.3d 82, 85 (Tex. Crim. App. 2013). As such, we do not defer to a lower court's resolution of legal questions. Similarly, when the mixed question does not turn on credibility and demeanor, appellate courts may exercise their discretion to review such questions de novo. *Guzman*, 955 S.W.2d at 87. We have said that "a question 'turns' on an evaluation of credibility and demeanor 'when the testimony of one or more witnesses, if believed, is *always* enough to add up to what is needed to decide the substantive issue.'" *Abney*, 394 S.W.3d at 547 (emphasis in original) (quoting *Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998)).

## C. A trial court's substantial-showing determination is reviewed de novo.

In *Druery*, 412 S.W.3d at 526, the appellant argued that he was incompetent to be executed, but the court denied his motion because it found that he had not made a substantial showing of incompetency. He appealed that ruling to this Court. In resolving his appeal, we first had to construe the statutory phrase "substantial showing." *Id.* at 536–41 (citing *Krause*, 405 S.W.3d at 85) (statutory construction is a question of law that is reviewed de novo). After an exhaustive analysis, we concluded that a substantial showing requires more than some evidence of execution incompetency but less than a preponderance. *Id.* at 536–41 (relying on federal constitutional considerations, analogous threshold determinations, the language and structure of Article 46.05, and decisions from other jurisdictions when construing the phrase "substantial showing" as a matter of first

impression).

We then discussed the standard of review applicable to the appellant's claim. *Id.* at 536 (determining the "[s]tandard of review applicable to a determination that Appellant failed to make a "substantial showing . . ."). Relying on the Fifth Circuit and the Western District of Texas, we said that we review a court's substantial-showing determination de novo when deciding whether the lower court applied the correct execution-competency standard, when the trial court did not comply with Article 46.05, or when due process was otherwise violated. *See id.* at 536–37 (citing *Panetti v. Stephens*, 727 F.3d 398, 409–10 (5th Cir. 2013); *Panetti v. Dretke*, 401 F. Supp. 2d 702, 705–06 (W.D. Tex. 2004)). Unlike this case, however, in *Druery* we reviewed the court's substantial-showing determination de novo because it did not comply with Article 46.05 and the prohibition against weighing credible evidence of incompetency and competency at the threshold stage of the proceedings. *Druery*, 412 S.W.3d at 542.

This case presents a question that we did not address in *Druery*, namely: What appellate standard of review applies to a trial court's substantial-showing determination when the court applied the correct competency standard, the proceedings complied with Article 46.05, and they did not violate due process? We hold that, in such a case, the lower court's substantial-showing determination is reviewed de novo because, at this stage of the proceedings, the court is not permitted to weigh competing credible evidence

of competency. Rather, it may consider only evidence of incompetency.[9] *Compare Green*, 374 S.W.3d at 444 (affirming ruling of trial court that the appellant was competent after weighing competing credible evidence at final execution-competency hearing, although the evidence supported a finding of both competence and incompetence), *with Druery*, 412 S.W.3d at 541 (explaining that, although the evidence at the threshold stage supported a finding of competency or incompetency, because evidence of only incompetency could be considered, weighing competing credible evidence was error).

### IV. WHAT IS THE MEANING OF "RESPONSIVE PLEADINGS" IN ARTICLE 46.05?

The State argues that the statutory phrase "responsive pleadings" should be interpreted such that the State "can, without offering 'additional' evidence, attack the credibility, reliability and relevance of the evidence in the defendant's pleadings, challenge jurisdiction, procedural errors or bars, and point out previously adjudicated facts and legal conclusions relevant to the defendant's competency." State's Brief at 10. It also asserts that, "[b]y requiring the trial court to consider the State's responsive pleadings in plain and unambiguous text, the statute must contemplate that the State would 'respond' (as an adversary) to the motion, documents and any affidavits contained in the defendant's motion." *Id.* at 10–11.

When interpreting the meaning of a statute, we aim to effectuate the collective

---

[9]Although a court may consider evidence of only incompetency at this point in the proceedings, it does not follow that the defendant's evidence will *always* be sufficient to make a substantial showing. For example, when the only evidence of incompetency is the opinion of an astronomy expert.

intent of the legislators who enacted the statute. *See Krause*, 405 S.W.3d at 85. We begin our analysis with the language of the provision, and if that language is plain, we will honor it, unless doing so would lead to absurd consequences that the Legislature could not have intended. *Id.*

Here, the statute does not address who may file responsive pleadings under Article 46.05, nor does it indicate whether such pleadings must be adversarial. Rather, the only requirement is that the trial court make its substantial-showing determination on the basis of those pleadings (among other considerations). TEX. CODE CRIM. PROC. art. 46.05(d). Thus, while the State may file a responsive pleading under Article 46.05, others may do so as well. In addition, the State's responsive pleadings need not be adversarial. For example, the State may agree that the defendant is incompetent to be executed or that experts should be appointed to assess the defendant's competency. *See, e.g.*, *Caldwell*, 58 S.W.3d at 128 (the State challenged the applicant's competency to be executed and sought the appointment of experts to evaluate him, although it believed that he was competent to be executed).

## V. WHETHER APPELLANT ESTABLISHED A SUBSTANTIAL SHOWING

To support his request for the appointment of experts, Appellant introduced medical records dating back to 1985, the trial testimony of three expert witnesses, affidavits from other competency experts, and letters written by Appellant while incarcerated.

In July 1983, Appellant was involuntarily committed to the Terrell State Hospital, a state-supported psychiatric inpatient unit. He presented as delusional, hallucinating, and combative, and he was described as "actively psychotic." In June 1985, Appellant was returned to the Terrell State Hospital by law-enforcement officers who found him "spaced out on crystal [meth]" and experiencing auditory hallucinations.

Following his May 2007 arrest on the instant offense, he was admitted to the East Texas Medical Center for the treatment of a gunshot wound. During his eight-day hospitalization, the nurses at times noted that he exhibited non-compliant and inappropriate behavior. At one point, he was lying in bed screaming for help and stating that he thought people were trying to kill him and that he thought they had killed his wife. He was also observed talking to someone who was not there and would urinate on himself. Ultimately, Appellant was discharged to the Smith County Jail, and when he was booked in, officials noted that he suffered from mental illness. He was later diagnosed with Organic Brain Syndrome, which psychologist James Underhill explained was a predecessor term for dementia. In October 2007, while still in the Smith County Jail, officials noted that Appellant continued to suffer from paranoia and odd affect, so he was prescribed a powerful anti-psychotic. A month later, he was again described as paranoid and guarded.

During his 2008 trial, numerous lay and expert witnesses described Appellant as mentally ill and exhibiting a pattern of irrational behaviors. Psychiatrist Theresa Vail,

who was under contract with the Smith County Jail, diagnosed Appellant with depression and a psychotic disorder not otherwise specified.[10] She noted that he suffered from delusions and hallucinations and that he was afraid that he was being poisoned and plotted against. She categorized his mental illness as severe and likely permanent because his drug abuse would have damaged his brain. Psychologist Dr. Gilda Kessner diagnosed Appellant with paranoid personality disorder and psychosis not otherwise specified.[11] Also at trial, psychiatrist Dr. David Self testified that Appellant suffered from delusions and paranoia.

In 2009, state habeas counsel retained Dr. Joan Mayfield to conduct a neuropsychological evaluation of Appellant. Dr. Mayfield found that Appellant suffered from impaired memory and dementia, among other deficits. In prison, he complained to medical staff on several occasions that he was having trouble breathing because he was allergic to ozone and needed antibiotics. However, medical personnel found no signs of

---

[10]Dr. Gilda Kessner testified that a psychosis not otherwise specified is a diagnosis given when a patient presents with psychotic disorder, but the clinician cannot determine whether the disorder is primary, due to a general medical condition, or substance-induced. She further stated that psychosis not otherwise specified "includes psychotic symptomatology, such as delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior about which there is inadequate information to make a specific diagnosis or about which there is contradictory information or disorders with psychotic symptoms that do not meet the criteria for [sic] nor any specific . . . psychotic disorder."

[11]Currently retained expert Dr. James Underhill explained that "[p]sychoses are disturbances in one's ability to understand what is real and what is not real as well as disordered logic leading one to make at times quite bizarre and incorrect interpretations of actions and objects in the real world, frequently reflecting unique and substantial misinterpretations of events in the real world."

troubled breathing. In July 2013, Appellant requested a sick call after he had eaten some bread, stating that he felt sick and thought he had purposefully been given contaminated food. He also accused guards and other prisoners of trying to harm him and suggested that, maybe they singled him out because he would not "participate in their games." Almost a year later, medical personnel wrote that Appellant should be scheduled for a mental-health evaluation after he continued to complain about gases in the air affecting his breathing.[12] In letters Appellant wrote to his family while in prison, he talked about wanting to start a business, asked his sister if she wanted to invest in a renewable energy program for his trailer home, and offered to help his sister build, or have built, a windmill tower for her electrical services.

Attorney Katherine Black met with Appellant in February 2015 and noted that he exhibited various odd behaviors and appeared delusional during their visit. Appellant told her that he heard voices that he connected to "evil spirits." He also complained to her about the ozone in the air filling his cell and causing him pain. He said it was worse on holidays when the cars on the road would fill his cell with carbon monoxide. When she asked him why he was in prison, he did not give her a clear answer and seemed somewhat confused by the question. Furthermore, when she asked questions about dates and times, he gave vague and muddled answers and conflated individuals and periods in his life. She noted that she had substantial doubts regarding whether Appellant was competent to be

---

[12]Although medical personnel recommended that Appellant's mental health be evaluated, there is no evidence that such an evaluation took place.

executed.

Finally, Appellant retained two new experts to review the historic and current information about Appellant to give their opinions regarding his execution competency. Appellant noted that, given the short time frame, the experts did not have time to evaluate him directly, but based upon everything they reviewed, both experts expressed substantial doubts about Appellant's competency to be executed. They also believe that Appellant should be evaluated by qualified court-appointed mental-health experts.

After reviewing the record de novo for only evidence of Appellant's incompetence, we hold that he made a "substantial showing" that he is currently incompetent to be executed. Therefore, he is entitled to further proceedings in accordance with Article 46.05, including the appointment of "at least two mental health experts" and a determination on the merits of his competency to be executed. The current stay of execution shall remain in effect pending the outcome of the competency proceedings in the trial court.

Hervey, J.

Delivered: December 16, 2015

Publish