

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00061-CR
_____

JOSE LUIS MORENOCASTANEDA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1789110

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

A Tarrant County[1] jury convicted Jose Luis Morenocastaneda of the murder of Evila Yanes. The trial court, adopting the jury's assessment of punishment, sentenced Morenocastaneda to life in prison.

The sole issue on appeal concerns two interrogations and whether Morenocastaneda's invocation of his right to counsel in the first interrogation carried over to the second interrogation. In other words, Morenocastaneda does not complain of the first interrogation. He did not confess to murder during that interrogation. Indeed, he relies on his assertion of his right to counsel during that interrogation. Morenocastaneda does not complain of the second interrogation either, at least not on a standalone basis. During the second interrogation, Morenocastaneda was again advised of his right against self-incrimination and his right to counsel. However, in that interrogation, he did not invoke his right to counsel. Morenocastaneda proceeded to speak with his interrogators. He admitted to striking Yanes in the head with a pipe. Morenocastaneda does not assert that, considering the second interrogation alone, his confession was involuntary. Instead, Morenocastaneda contends that his invocation of his right to counsel in the first interrogation rendered his confession in the second interrogation involuntary, and thus, inadmissible. In practical effect, Morenocastaneda contends that there never should have been a second interrogation.

---

[1]This appeal was transferred to this Court from the Second Court of Appeals pursuant to a Texas Supreme Court docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). Accordingly, we apply the precedent of the Second Court of Appeals in deciding this case to the extent that it conflicts with our own. *See* TEX. R. APP. P. 41.3.

The parties present arguments regarding the right against self-incrimination as protected by *Miranda v. Arizona*,[2] the prohibition on subsequent interrogations after a party has invoked their right to counsel as set forth in *Edwards v. Arizona*,[3] and the exception to *Edwards* when there has been a "break in custody" as described by *Maryland v. Shatzer*.[4] In sum, this case turns on whether there was a "break in custody" between the first interrogation and the second.

The trial court denied Morenocastaneda's motion to suppress the confession made in the second interrogation. We decide this appeal under a bifurcated standard of review, which shows deference to the trial court's fact-findings, both actual and implied. Under that standard of review, we affirm the trial court's denial of Morenocastaneda's motion to suppress. Since the trial court's ruling on the motion to suppress is the sole issue on appeal,[5] we also affirm the trial court's judgment.

## I. Overview of Relevant Authority Regarding Confessions

"The warnings set out by the United States Supreme Court in *Miranda v. Arizona* were established to safeguard an uncounseled individual's constitutional privilege against self-incrimination during custodial interrogation." *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) (citing *Miranda*, 384 U.S. at 467–79). In 1981, in *Edwards*, the United States Supreme Court held that "it is inconsistent with *Miranda* and its progeny for the authorities, at

---

[2]*Miranda v. Arizona*, 384 U.S. 436, 467 (1966).

[3]*Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981).

[4]*Maryland v. Shatzer*, 559 U.S. 98, 103 (2010).

[5]In conjunction with contending that the admission of his confession was erroneous, Morenocastaneda contends that its admission was harmful. The State contends that, given other evidence of Morenocastaneda's guilt, admission of the confession, if error, was harmless. For reasons set out herein, we do not reach the question of harm.

their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." *Edwards*, 451 U.S. at 485.[6]  *Edwards* made such post-invocation interrogations presumptively involuntary. *Id.*  The purpose of the *Edwards* rule is "to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights."[7]  These cases have been referred to as "the *Miranda–Edwards* 'Fifth Amendment' right to counsel" because of the role of counsel in protecting the Fifth Amendment[8] right against self-incrimination.[9]  Another term for this is "[t]he Fifth Amendment Right to Interrogation Counsel."[10]

In 2010, the United States Supreme Court revisited the subject. *Shatzer*, 559 U.S. at 105–06.  The Supreme Court acknowledged that the *Edwards* rule was a judicially-created prophylactic measure to guard against coercion after a party has invoked the right to counsel. *Id.* The Supreme Court held that the *Edwards* rule came at a cost. *Id.*  "Voluntary confessions are not merely 'a proper element in law enforcement,' *Miranda*, [384 U.S. at 478], they are an 'unmitigated good,' . . . "'essential to society's compelling interest in finding, convicting, and

---

[6]*See McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991); *McCarthy v. State*, 65 S.W.3d 47, 52 (Tex. Crim. App. 2001) ("In sum, the *Edwards* rule does not take into account the good intentions of the individual police officer, the lack of official coercion or badgering in the particular case, or the actual voluntariness of a person's custodial statement."); *Arizona v. Roberson*, 486 U.S. 675, 683 (1988) ("[T]he presumption raised by a suspect's request for counsel—that he considers himself unable to deal with the pressures of custodial interrogation without legal assistance—does not disappear simply because the police have approached the suspect, still in custody, still without counsel, about a separate investigation.").

[7]*Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

[8]U.S. CONST. amend. V.

[9]*McNeil*, 501 U.S. at 177.

[10]*Pecina v. State*, 361 S.W.3d 68, 74 (Tex. Crim. App. 2012).  These are shorthand phrases, though. *See id.* at 74 n.16.  "The prophylactic *Miranda* warnings are 'not themselves rights protected by the Constitution but [are] instead measures to [e]nsure that the right against compulsory self-incrimination [is] protected.'" *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (first and third alterations in original) (quoting *Michigan v. Tucker*, 417 U.S. 433, 444 (1974)).

punishing those who violate the law,"' [*McNeil*, 501 U.S. at 181]." *Shatzer*, 559 U.S. at 108 (citations omitted). The Supreme Court expressed concern in *Shatzer* that a perpetual ban on post-invocation interrogations would do more harm than good by foreclosing the possibility of obtaining voluntary confessions. *Id.* at 108–09. There comes a point where the risks of coercion have dissipated. *Id.* at 109. Thus, the Supreme Court announced the "break in custody" exception to *Edwards*. *Id.* The Supreme Court set out a guideline by stating, "[Fourteen days] provides plenty of time for the suspect to get reacclimated to his normal life, to consult with friends and counsel, and to shake off any residual coercive effects of his prior custody." *Id.* at 110.

"[C]ustody" in this context, however, refers to "*Miranda* custody," which "is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 507, 508–09 (2012).[11] For example, being in prison sounds like being in custody in the everyday use of the word, but it can be a break in the "serious danger of coercion" at issue in *Miranda* custody.[12] *Id.* at 509. The Texas Court of Criminal

---

[11]*See Bass v. State*, 723 S.W.2d 687, 691 (Tex. Crim. App. 1986) ("Undoubtedly the legislature intended that the term 'custodial interrogation' [in Article 38.22 of the Texas Code of Criminal Procedure] be construed consistently with its meaning under the Fifth Amendment.").

[12]"[A] break in custody may occur while a suspect is serving a term in prison." *Howes*, 565 U.S. at 510. "Without minimizing the harsh realities of incarceration, we think lawful imprisonment imposed upon conviction of a crime does not create the coercive pressures identified in *Miranda*." *Shatzer*, 559 U.S. at 113.

> [Q]uestioning a person who is already serving a prison term does not generally involve the shock that very often accompanies arrest. In the paradigmatic *Miranda* situation—a person is arrested in his home or on the street and whisked to a police station for questioning—detention represents a sharp and ominous change, and the shock may give rise to coercive pressures.

*Howes*, 565 U.S. at 511. Though *Howes* spoke directly to what might constitute a break in custody, that was not the question before the Supreme Court. *Id.* at 504. *Howes* involved a prisoner who was questioned *without* being given *Miranda* warnings. *Id.* Consequently, the question before the Supreme Court was not whether there had been a

Appeals has likewise stated, "We find no basis for the assumption that the coercive aspects of custodial interrogation are present in every instance in which an inmate is questioned by a law enforcement officer." *Herrera*, 241 S.W.3d at 531. Pertinent to present circumstances, *Herrera* involved a defendant who was questioned "while he was in held in the county jail on an unrelated offense." *Id.* at 522.

A break in *Miranda* custody matters because

there is no reason to believe a suspect will view a confession as "'the only way to end his interrogation'" when, before the interrogation begins, he is told that he can avoid it by simply requesting that he not be interrogated without counsel present—an option that worked before. If . . . a break in custody does not change the suspect's mind, he need only say so.

*Shatzer*, 559 U.S. at 115 (quoting *id.* at 125 (Stevens, J. concurring)).

Consistent with the burden to show the voluntariness of confessions in other contexts, the State bore the burden to show a *Shatzer* "break in custody" to avail itself of the *Shatzer* exception to the *Edwards* rule. *See McKane v. State*, 726 S.W.3d 413, 421 (Tex. Crim. App. 2025), *appeal docketed*, No. 25-7055 (U.S. Mar. 18, 2026) ("The State bears the burden of proving a knowing, intelligent, and voluntary waiver by a preponderance of the evidence." (citing *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010))).[13]

With these concepts in mind, we turn to the facts and arguments in this case.

---

*Shatzer* "break in custody" between two Mirandized interrogations, but instead was whether the prison interrogation took place under circumstances that amounted to *Miranda* custody and therefore required *Miranda* warnings. *Id.* at 517 ("[W]e hold that respondent was not in custody within the meaning of *Miranda*.").

[13]*See Rodriquez v. State*, No. 07-22-00257-CR, 2023 WL 4714080, at *2 (Tex. App.—Amarillo July 24, 2023, pet. ref'd) (mem. op., not designated for publication). The State embraces the burden to show a *Shatzer* "break in custody." We therefore assume without deciding that the second interrogation took place under circumstances amounting to *Miranda* custody.

## II. Factual Background

On May 28, 2021, a Tarrant County grand jury charged Morenocastaneda with continuous family violence against a person he was dating, Yanes, by acts including scratching her, grabbing her, and pouring gasoline on her. Morenocastaneda was released on bond. Yanes paid Morenocastaneda's bail. On February 22, 2022, Morenocastaneda pled nolo contendre to the lesser-included offense of assault causing bodily injury to a family member. The trial court placed Morenocastaneda on deferred adjudication community supervision. One of the conditions of his supervision was that he was not to contact Yanes "in any manner (directly or indirectly)."

At around 4 a.m. on October 30, 2022, a Tarrant County man returned home from a night out with friends to find an unfamiliar car in front of his house, and next to it, a dead woman. He called the police. The woman was Yanes. The autopsy revealed bruises all over Yanes's body, broken bones in her face, and evidence of fatal blow(s) to the back of her head with a heavy blunt object. The investigation by the Arlington Police Department (APD) did not turn up security footage of the crime being committed. But the investigation did discover security footage placing Morenocastaneda and Yanes together in an Arlington grocery store on the evening of October 29, 2022. Morenocastaneda could not be found at the work address he had given to his community-supervision officer. Morenocastaneda did not show up for a scheduled meeting with his community-supervision officer. The APD held a press conference to solicit the public's help in locating Morenocastaneda. Tips from the public led to the December 1, 2022, arrest of Morenocastaneda. At that time, Morenocastaneda was arrested for violating his conditions of community supervision.

The first interrogation took place at the APD in conjunction with his December 1, 2022, arrest. The investigating officers told Morenocastaneda that Yanes was dead. The officers told Morenocastaneda they wanted his help in identifying who killed Yanes. Officers then warned him pursuant to *Miranda*. Morenocastaneda asked to speak to an attorney. The interrogation went no further. As a result, the interrogating officers did not reveal what the investigation had uncovered up to that date. Nonetheless, the stakes of the first interrogation were plain and high. As stated by Morenocastaneda at the hearing on his motion to suppress, "[Officers told] him that his ex [wa]s dead. So he [knew they were] talking about an allegation of murder."

Between the first interrogation and the second interrogation, Morenocastaneda was never a free man. Following the first interrogation, Morenocastaneda was transferred to the Tarrant County Jail, where he remained until the hearing on the State's motion to adjudicate regarding the bodily injury to a family member charge. During the months spent in the Tarrant County Jail awaiting adjudication, Morenocastaneda was not questioned about the death of Yanes. Nor was he provided counsel specifically regarding the murder charge; there was no murder charge at that time. Morenocastaneda was appointed counsel regarding the State's motion to adjudicate. Eventually, Morenocastaneda pled true to violating the terms of his community supervision. At the July 6, 2023, adjudication hearing, the trial court sentenced him to 200 days in jail and gave him credit for the 243 days of jail time he had served. In other words, Morenocastaneda had completed that sentence.

While in the Tarrant County Jail, Morenocastaneda was subject to an immigration detainer that was placed on him by the United States Immigration and Customs Enforcement

8

(ICE) agency. The detainer was placed at the time of Morenocastaneda's arrest for violating the terms of his community supervision. As a result, on July 7, 2023, Morenocasteneda was transferred to an ICE detention facility almost an hour's drive away.

The second interrogation occurred thirteen days later on July 20, 2023. From December 2022 to July 2023, the APD investigation regarding Yanes's murder had been ongoing. Among other things, DNA obtained from the vehicle at the crime scene was sent off for testing. When the DNA results came back, they indicated that Morenocastaneda had been in that vehicle. For that and other reasons, the APD obtained a warrant for Morenocastaneda's arrest for the murder of Yanes. On July 19, 2023, officers with the APD retrieved Morenocastaneda from the ICE detention center and brought him to the APD facility. The interrogating officers provided Morenocastaneda *Miranda* warnings regarding his rights. Morenocastaneda said that he remembered those warnings from the first interrogation. However, during this second interrogation, he did not ask for an attorney. The interrogation proceeded. Ultimately, Morenocastaneda confessed to striking Yanes in the head with a pipe.

## III.    Arguments of the Parties

During the pre-trial stage of the murder case, Morenocastaneda moved to suppress his confession. He contended that his request to speak to an attorney from the first interrogation should result in the exclusion of anything said during the second interrogation.[14]

---

[14]During trial, Morenocastaneda asserted that the second interrogation was involuntary and coercive in its own right. He does not make that assertion on appeal. *See Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010) ("Although *Miranda* imposes on the police a rule that is both formalistic and practical when it prevents them from interrogating suspects without first providing them with a *Miranda* warning, . . . it does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights. As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has

Morenocastaneda contended in the trial court, and contends here, that the *Edwards* rule should apply, and that there was no *Shatzer* "break in custody" between the first interrogation and the second. Morenocastaneda contends that while in the Tarrant County Jail awaiting adjudication on the family violence charge, he was in the custody of the same authorities pursuing the looming murder charge against him. Morenocastaneda contends that at the time of the second interrogation, he was expressly being held on the charge he was first interrogated for, the murder of Yanes. He contends that he never returned to a state of normalcy following the first interrogation. Among other things, he points out that he is from Mexico, as are his friends and family (at least those he is close to). He complains of "bad[]" and "ugly" food in the ICE detention facility. He complains that the second interrogation was conducted shortly after a disruptive transfer from the ICE detention facility to the APD facility. Morenocastaneda contends these circumstances fit squarely within *Edwards* and fall outside of *Shatzer*.

The State contends that there was a "break in custody" within the meaning of *Shatzer*. Specifically, the State contends that "the passage of time while Appellant waited in jail for the disposition of the motion to revoke his probation counted toward the fourteen days." The State contends that "because *Shatzer* established a bright-line rule . . . no other factors must be considered by a court in determining whether there is a sufficient break in custody."

## IV. Standard of Review

The standard of review regarding motions to suppress is established. "We review a trial court's ruling on a motion to suppress using a bifurcated standard for an abuse of discretion."

---

made a deliberate choice to relinquish the protection those rights afford." (citation omitted)); *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011).

*State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023). "We defer to a trial court's findings of fact that are supported by the record." *Id.* "We review de novo legal questions and mixed questions that do not turn on credibility and demeanor . . . ." *Id.*[15] "The evidence and all reasonable inferences are viewed in the light most favorable to the trial court's ruling, and the trial court's ruling must be upheld if it is reasonably supported by the record and is correct under a theory of law applicable to the case." *Id.*

The bifurcated review process applies in the *Miranda* context. *Pecina*, 361 S.W.3d at 78–79 ("In reviewing claims concerning *Miranda* violations and the admission of statements made as the result of custodial interrogation, we conduct [a] bifurcated review . . . .").

> When a trial court denies a motion to suppress and does not enter findings of fact, we view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.

*Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021). "The party that prevailed in the trial court is afforded the strongest legitimate view of the evidence, and all reasonable inferences that may be drawn from that evidence." *Id.*

Videographic evidence can present questions of credibility and demeanor. *State v. Duran*, 396 S.W.3d 563, 570–71 (Tex. Crim. App. 2013); *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012) ("The court of appeals should view the video in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings that support the denial of Appellant's motion to suppress.").

---

[15]*Espinosa* involved review of a trial court's probable cause ruling. *Espinosa*, 666 S.W.3d at 667. "Whether probable cause existed is a mixed question of law and fact that does not turn on credibility and demeanor." *Id.* at 669. Consequently, "[o]n appeal, a finding of probable cause is reviewed de novo." *Id.*

## V.    Analysis

We find no abuse of discretion in the trial court's denial of the motion to suppress.

Transcripts and video recordings from both interrogations were before the trial court for purposes of Morenocastaneda's motion to suppress. The trial court stated, on the record, that it reviewed both videos. While no live witnesses were called at the hearing on Morenocastaneda's motion to suppress, the trial court had evidence before it regarding Morenocastaneda's experiences between the first and second interrogations. That evidence came from Moreneocastaneda himself during the second interrogation. Among other things, Morenocastaneda stated that he had been crying alone while in jail, unable to find peace. Instead of asserting that he was coerced into a confession, Morenocastaneda stated that he thought that "if they brought [him] [t]here [he] was going to tell the truth." Morenocastaneda argues that he was never able to return to normalcy as he knew it before December 1, 2022. It is undisputed that he was not bailed out this time, and that while he had some siblings in Texas, his close family members were in Mexico. But Morenocastaneda does not attribute those facts to acts of the State. In any event, during the second interrogation, Morenocastaneda discussed his life before December 1, 2022.

Morenocastaneda's first interrogation involved the same police department. Consequently, the video recording of Morenocastaneda's first interrogation provides context for the trial court's weighing of the testimony and credibility of the second interrogation. As additional context, the same trial court, the 372nd Judicial District Court of Tarrant County, presided over both the family violence case and the murder case. "The reason that reviewing

12

courts defer to the trial court's factual determinations is precisely because the judge is 'Johnny-on-the-spot,' personally able to see and hear the witnesses testify." *Mays v. State*, 476 S.W.3d 454, 459 (Tex. Crim. App. 2015) (quoting *Manzi v. State*, 88 S.W.3d 240, 254 (Tex. Crim. App. 2002) (Cochran, J., concurring)).

Accordingly, we defer to the trial court's assessment of whether Morenocastaneda's time spent in the Tarrant County Jail constituted a *Shatzer* "break in [*Miranda*] custody" between the interrogations in the APD stationhouse.

The trial court was provided *Shatzer* at the hearing on Morenocastaneda's motion to suppress. While the parties present arguments on appeal regarding *Edwards* and *Shatzer*, neither side contends that the trial court relied on the wrong legal rule when denying Morenocastaneda's motion to suppress. Rather, it appears that the parties, on appeal, are inviting this Court to decide the matter de novo based on additional legal authorities not provided to the trial court. We decline to decide the matter de novo.

We do, however, reject two legal contentions presented by the parties.

Morenocastaneda asserts that "his period in custody from December 2022 to July 2023 (until he was transferred to ICE), cannot show a break in custody." Morenocastaneda cites no case establishing, *as a rule of law*, that the time spent in a county jail *can never* serve as a break from *Miranda* custody at a police stationhouse. Morenocastaneda cites cases supporting his argument that, in his circumstance, his time spent in jail should not count under *Shatzer*. But "should not" is different from "can never." For example, the Supreme Court in *Shatzer* itself spoke of "the vast differences between *Miranda* custody and *incarceration pursuant to*

13

*conviction*." *Shatzer*, 559 U.S. at 114 (emphasis added). Morenocastaneda reasons that he was in jail, not serving a post-conviction prison sentence, and that difference should legally control the outcome of his case. Likewise, Morenocastaneda points to *Shatzer*'s discussion of "the paradigm *Edwards* case. That is a case in which the suspect ha[d] been arrested for *a particular crime* and [wa]s held in uninterrupted pretrial custody while *that crime* [wa]s being actively investigated." *Id.* at 106 (emphasis added). Morenocastaneda's situation is not "the paradigm *Edwards* case." *See id.* But it is close: Morenocastaneda was not in the Tarrant County Jail on a murder charge. He was in jail for months awaiting adjudication on a family violence charge regarding the murder victim.

*Shatzer* observed, "Sentenced prisoners, in contrast to the *Miranda* paradigm, are not isolated with their accusers. They live among other inmates, guards, and workers, and often can receive visitors and communicate with people on the outside by mail or telephone." *Id.* at 113. A Tarrant County district judge would be in the better position to know whether, under the circumstances of Morenocastaneda's case, the Tarrant County Jail offered conditions more akin to incarceration, at least for *Miranda* custody purposes. Contrary to Morenocastaneda's position that this is susceptible to resolution as a question of law, *Herrera* held, under the circumstances of that case, that a defendant could be interrogated *in jail* regarding a different matter without presenting the risks of coercion amounting to *Miranda* custody. *See Herrera*, 241 S.W.3d at 522, 531. Here, Morenocastaneda was not interrogated during his months in the Tarrant County Jail. If Morenocastaneda's time spent in the Tarrant County Jail did not rise to the level of

14

*Miranda* custody under the fact-based *Herrera* decision, then it would be a break in *Miranda* custody for *Shatzer* purposes. The trial court implicitly found that such a break occurred.

The State asserts that the passage of more than fourteen days is all that is needed to be considered under *Shatzer*. That too misses the mark. Whether there has been a break in *Miranda* custody needs to be determined before counting off the days. *Shatzer*, 559 U.S. at 110 ("*If* Shatzer's return to the general prison population qualified as a break in custody, . . . there is no doubt that it lasted long enough (two years) to meet that durational requirement." (emphasis added)). Notably, *Shatzer* did not get into the weeds of determining where, exactly, within that longer timespan the fourteen days began and ended. *See id.* We follow *Shatzer*'s example.

In *Pecina*, the Texas Court of Criminal Appeals recounted Justice Jackson's warning that the Supreme Court "is forever adding new stories to the temples of constitutional law, and the temples have a way of collapsing when one story too many is added." *Pecina*, 361 S.W.3d at 74 (quoting *Montejo v. Louisiana*, 556 U.S. 778, 799 (2009) (quoting *Douglas v. City of Jeannette*, 319 U.S. 157, 181 (1943))). In light of that, we decline to decide this case as a matter of law as though the Supreme Court or the Texas Court of Criminal Appeals has added additional floors on top of the three-story *Miranda-Edwards-Shatzer* structure or locked the door to a room on the *Shatzer* floor.

Given the deferential standard of review set forth above, we consider the trial court's denial of the motion to suppress as a ruling that the State established factually, and by a preponderance of the evidence, that there was a break in *Miranda* custody that satisfied *Shatzer*

15

and thereby overcame the *Edwards* presumption. We find the trial court's ruling to be reasonably supported by the record and correct under a theory of law applicable to the case.

## VI. Conclusion

We affirm the judgment of the trial court.


Jeff Rambin
Justice

Date Submitted:     November 10, 2025
Date Decided:       June 12, 2026

Do Not Publish

16